## MERRIMACK, JANUARY TERM, 1825.

~~~~

### R. R. *vs.* J. M.

*R. R.* made her complaint to a justice of the peace, that she was pregnant with a child, that might be born a bastard ; and that *J. M.*, at a certain time, had had carnal knowledge of her body, at which time said child was begotten by him : on this complaint he was held to answer ; and the issue whether chargeable or not was joined between the parties, and the respondent found chargeable by the jury ; his counsel then objected, that the proceedings furnished no legal foundation for an order of filiation, 1, because it did not appear, that the child was born alive ; 2, because it did not appear that the complainant had continued constant in her declarations, that he was the father of the child ; 3, because it did not appear, that she had declared him to be the father of the child in the time of her travail ; but the court overruled these objections, and adjudged him chargeable.

*R. R.* made her complaint in writing upon oath to a justice of the peace, alleging that she was pregnant with a child, which, if born alive, might be a bastard, and become chargeable to the town of *C.*, and that the said *J. M.*, on or about the 10th January, 1822, had carnal knowledge, &c. at or about which time the said child was begotten by said *J. M.*

A warrant was issued by the justice, and *M.* having been arrested, gave bond for his appearing, and answering the said complaint, in this court. The respondent appeared here ; but the said *R. R.* having neglected to take the steps prescribed by the statute to entitle her to be a witness in the case, while prosecuted on her own account, abandoned the cause ; but the town of *C.* came and took upon itself the prosecution, in order to compel the respondent to give security to save the town harmless from the maintenance of the child.

The issue prescribed by the statute, " whether chargea-" ble or not," was tried here at February term, 1824 ; when the jury found the respondent chargeable.

*Merrill*, for the town of *C.*, moved the court to make an order upon the respondent, to give security to save the town harmless, and to pay the costs of the prosecution.

*Stevens*, for the defendant.

This case rests upon the provisions of a statute of this state, passed February 11, 1791, entitled, " An act for the main-" tenance of bastard children," and to support the proceed-

R. R.
vs.
J. M.

ings, and entitle the complainant to an adjudication, it must appear that the requisitions of the statute have been substantially complied with. To render the defendant chargeable, the act requires the existence of certain facts, which facts constitute the case, upon which a recovery is to be had, if had at all ; they are by the statute, made matter of substance, and as such, must be set forth and appear of record. This proceeding is in the nature of all actions brought by the complainant, to secure the remedy which the statute gives ; it is therefore to be considered and treated like all other statutable process, and must be governed by the common law rules, applicable to pleadings in similar cases. It is a general and well settled rule in pleading, that a plaintiff must aver every fact, without being informed of which, the court cannot judge whether he has cause of action.— Whatever is necessary to constitute a ground of complaint must be stated. *Com. Dig. Tit.* "*Action upon Statute,*" *A. 3.* —*Ib. Tit.* "*Pleader,*" *C. 76.*—1 *Chitt. Pl.* 216.

Again. When the plaintiff founds his action on a statute, he ought to aver every fact necessary to inform the court that his case is within the statute. All circumstances necessary to support the action must be alleged. *Com. Dig. Tit.* "*Pleader,*" *C.76.--Ib.* "*Action on Statute,*" *A.3.--*1 *Chitt.Pl.*357. In an action on the statute, (14 *H.* 8, 5.) for practising physic within seven miles of London, without a licence, if the plaintiff alleges practice at Westminster, and doth not aver that it was within seven miles of London, it is bad. *Com. Dig.* "*Pleader,*" *C.* 76.—4 *Mod.* 47. It would appear in evidence that Westminster is within seven miles of London. The jury might return a verdict for the plaintiff ; but all this would not aid or cure the defect ; the record would still show the plaintiff's case to be incomplete, and one on which the court could not proceed to render judgment ; for judgment is not rendered on a case of facts made out in evidence before a jury ; but on averments, in the pleadings, of all such facts as are necessary to entitle the plaintiff to recover. The statute of New-York, for preventing usury, gives, to the common informer, the right of bringing his action for the penalty, which the statute imposes, provided the

party aggrieved shall neglect to prosecute within one year. R. R.
In an action of *qui tam*, on that statute, it was held necessa-   vs.
ry for the plaintiff to allege in his declaration, that the party   J. M.
aggrieved had neglected to sue within the year, in order to
give the common informer a right of action.   7 *Johns. Rep.*
402. If any additional authority be required to establish the
doctrine or principles here contended for, it may be found in
the case of *James Drowne*, plaintiff in error, *vs. Lydia Stimp-
son*, (2 *Mass. Rep.* 441,) wherein C. J. PARSONS says,
" It is an uniform rule of law, that where a statute gives a
remedy under particular circumstances, the party, seeking
the remedy, should, in his plaint or information, allege all
facts necessary to bring him within the statute." This case
is not only an authority in support of the general principle as
to averments in pleading, but it is directly in point ; it es-
tablishes the doctrine now insisted on for the defendant.
The questions raised and considered by the court, in that
case, cannot in principle be distinguished from those now
under consideration. It was a writ of error, brought upon a
judgment of a court of common pleas, which had been ren-
dered on a complaint, founded on a statute of the state of
Massachusetts, against bastardy. The statute requires that
the woman shall charge the father of the child in the time
of her travail, and shall continue constant in her accusation.
The process contained no allegation that the complainant did
so charge the father of her child, nor that she had continued
constant in her accusation. And these omissions, the court,
after a continuance for advisement, pronounced fatal errors,
and quashed the proceedings. The supreme court of
the state of Maine, in the case of *Foster vs. Beaty*, (1
*Maine Rep.* 334,) which was also a complaint founded up-
on the statute of that state against bastardy, settled a ques-
tion, not different in principle from what in this case is con-
tended for, and refer to the case of *Drowne vs. Stimpson*, as
the authority to support their decision. If the Massachu-
setts and Maine cases are settled upon correct and legal
principles ; if the law, as therein declared, is sound, it is not
easy to see why the defendant's motion should not prevail.—
It will not be contended that the respondent can be charged,

R. R,
*vs.*
J. M.

unless the child was born alive, in as much as the statute requires the existence of that fact. If so, then this circumstance becomes matter of substance, it constitutes a material part of the case ; it is a fact that must appear in evidence on the trial of the cause, and without it, the prosecution must fall. If then it must be shown in evidence—if it be so material, that the process cannot be sustained without it—it most certainly, according to all the rules of good pleading, must be stated and must appear of record. It may be objected, that the process could not have contained averments of those facts, the omission of which is now made the ground of this motion, in as much as the statute requires the complainant to make her charge on oath before a magistrate, previous to her delivery. And in answer, it is argued, that the proceedings before the justice, from the very requirement of the statute cannot allege and set forth these facts. But it is contended, that the complainant, after the birth of her child, and after entering her process at this court and before the trial, should have filed an additional declaration, plaint, or information, alleging and setting forth such further facts, as are contemplated by the statute as being necessary to make out a case. And to support this course of procedure, the case of *Foster vs. Bealy*, before cited, is relied upon as an authority in point.—The language of the statute itself, " and he shall be prosecuted as the father of such child before the court of general sessions of the peace," seems to carry the idea that new proceedings are to be had, when the case gets before the higher tribunal. The complaint in the present case is sufficient, as to all the purposes, for which it was designed by the statute. The object of the legislature, in requiring the complainant to make oath previous to her delivery, was to guard as much as possible against perjury, presuming probably, that in view of the approaching hour of distress and of peril, she would be more likely to make a true disclosure, than at a subsequent period, when the time of danger should be past. The charge on oath before the magistrate is but the commencement of process ; it is merely laying the foundation for other proceedings before the court, and for the purpose of qualifying the complainant to be a witness.

But it is said, that the verdict has found the defendant chargeable, and that this will aid the proceedings. If the defects complained of are mere matters of form, and such as would be adjudged bad, only on special demurrer, the verdict may be called in aid ; but if they are substantial and such as to render the case altogether imperfect, then it is believed to be otherwise. " If the declaration does not con-" tain cause of action, it shall not be aided by verdict."— *Com. Dig. Tit. " Pleader,"* C. 87.

Again. A long and uniform practice is summoned in aid and urged in support of the proceedings. And this is an argument, which in some cases ought to have its weight, but in this instance, it can and ought to have but small influence.— The practice relied on has not been at this court, but at courts of an inferior jurisdiction, and of course not entitled to that respect, which is attached to usages, sanctioned by the highest judicial tribunal. But further, any practice, at whatever court it may have obtained, when found to be at war with general, long acknowledged, and well settled principles, should be changed or discontinued. And such appears to be the opinion of this court. It had long been the practice in this state to replevy property attached on mesne process, but so soon as the court were called to an examination of the subject, and finding the usage not to be founded on legal principles, and not supported by authority, they hesitated not to decree that the error should no longer continue. So in this case, if it be found that this informality in process cannot be supported by authority, that it tends to produce uncertainty in the law, it is not doubted that the court will sustain the motion and correct the evil.

RICHARDSON, C. J. delivered the opinion of the court.

It is objected, that it does not appear by the record in this case, that the child, with whose maintenance the respondent has been found by the jury chargeable, was born alive ; and that, by reason of that defect, there is no legal ground, on which he can be ordered by the court, to give security, to save the town of C. harmless from its maintenance. To ascertain if this objection have any foundation in fact, it is necessary to examine the record. Upon looking into

R. R.
*vs.*
J. M.

R. R.
*vs.*
J. M.

the proceedings, it appears that, previous to the birth of the child, the mother went before a justice of the peace, and made her complaint, that she was pregnant, and that the child had been begotten by the respondent.  It also appears, that he, being held to answer the said complaint, came into court ; and that the issue, "whether chargeable or not," as prescribed by the statute, was joined between the parties to the prosecution.  The joining of this issue is an allegation on the part of those who prosecute, that the respondent is chargeable with the maintenance of the child ; and that allegation necessarily implies, and cannot be proved without evidence of the birth of a living child.  And the jury could not have found the respondent chargeable, had they not found, that the child was born alive.  That fact then appears by necessary implication, not only from the allegation of those, who prosecute, but from the finding of the jury.  If then, we apply to this case the most rigid rules of law, this is an instance not of a defective title, but of a title defectively stated, and is cured by the verdict.  *2 N. H. Rep.* 385, *Walpole vs. Marlow.*

It is also contended, that the proceedings in this case are defective, because it does not appear, that the complainant declared, in the time of her travail, that the respondent was the father of the child, nor that she has continued constant in her declarations ; and the remarks of PARSONS, C. J. in the case of *Drowne vs. Stimpson,* (2 *Mass. Rep.* 441,) seem to give some countenance to this exception.  But upon the most mature consideration, we are of opinion, that it must be overruled.  It is true, that to entitle the mother of the child to be a witness in a prosecution, which she carries on to compel him to contribute to its support, it must be shewn, that previous to her delivery she voluntarily, on oath before a justice of the peace, charged the respondent with being the father of the child, and declared, as near as might be, the time when, and the place where, it was begotten.  It must also be shewn, that she, in the time of her travail, declared the respondent to be the father of the child, and that she has continued constant in her declarations.  All this must be shewn, before she can be permitted, while she has an inter-

est in the cause, to be a witness. Her credit must be fortified by proof of these circumstances, before she is entitled to testify in her own cause. But it has never been understood in this state, that the liability of the respondent, in these cases, depended upon the proof of these circumstances. It has always been supposed, that the respondent was to be charged, because he was in fact the father of the child, and not because the complainant had, in the time of her travail, declared him to be the father, nor because she had continued constant in her declarations. In the case of *Locke, complainant, vs. Smiley,* in the county of Hillsborough, April term, 1823, the complainant was rejected as a witness, because she had not, in the time of her travail, declared the respondent to be the father of her child ; but the prosecution was permitted to proceed, and the respondent was found by the jury and adjudged by the court to be chargeable. In the case of *Colby, complainant, vs. Storrs,* in the county of Grafton, November term, 1822, the complainant died at the time the child was born. But the town, in which the child had its settlement, was permitted to come into court and prosecute ; and upon proof of the dying declarations of the mother, and other circumstances, the respondent was found chargeable, and so adjudged by the court. In the case of *Clogston, com plainant, vs. Lund,* in the county of Hillsborough, October term, 1824, the complainant, having neglected to declare in her complaint before the justice of the peace the time when the child was begotten, abandoned the prosecution. But the town, in which the child was settled, came into court and prosecuted ; and the respondent was found by the jury chargeable, and was ordered by the court to give security, to save the town harmless from the maintenance of the child.

It seems, from the case of *Drowne vs. Stimpson,* to which we have before referred, that in Massachusetts, where the provisions of their statute are, in this respect, substantially the same as the provisions of our statute, their court, following the letter of the statute, have held, that the respondent was not chargeable within the intent of the statute, unless the mother of the child charged him in the time of her travail with being the father, and continued constant in her de-

R. R.
*vs.*
J. M

claration. But in this state, a much more liberal construction has been always given to the statute. No complaint is known to have existed, containing an allegation of those facts. Indeed, as the respondent has always been tried upon the complaint made to the justice of the peace previous to the birth of the child, there could be no such allegations. It has never been the practice in this state, to file a new complaint, after the birth of the child. It appears by the remarks of PARSONS, C. J., in the case just mentioned, which was decided in the year 1807, that up to that time it had not been the practice in Massachusetts, to insert, in the complaint, those allegations ; and we have felt no small degree of curiosity to learn the grounds, on which that eminent judge was induced to call in question the accuracy of the forms then in general use. In delivering his opinion, he refers to the English statutes of hue and cry ; and there is some reason to conjecture, that he drew from the form of the declaration upon those statutes the principles, he seems to have been disposed to apply to the statute relating to the support of illegitimate children. We have looked into the statutes of hue and cry, and find that by the statute of Winton, which was enacted in the 13th year of Edward I., the hundreds, where robberies were committed, were made liable for the robberies done, provided the inhabitants of the hundred did not take the robbers within 40 days. 2 *Saund.* 374, *note I.* The statute of the 27 *Eliz. cap.* 13, *sec.* 11, enacted, that the party robbed should not have any action, except he first, within 20 days before such action is brought, be examined upon oath before some justice of the peace, whether he knew the parties that committed the robberies, or any of them.— Since the passing of this last statute, it has been usual to allege in the declaration, that the party robbed was thus examined. *Pinkney vs. East hundred*, in the county of Rutland, 2 *Saund.* 174.—*Lilly's Entries* 295. But it has long been settled, that this is not necessary ; because the action is founded on the statute of Winton, which does not require it ; and the statute of 27 *Eliz.* is only directory ; and its directions need not be inserted in the declaration. 2 *Saund.* 276, *note* 5.—2 *Salk.* 614, *Dawley vs. The hundred of*

*Odium.* It is, however, probable, that it would have been held necessary to allege in the declaration, that the party robbed was examined upon oath, had the statute of Winton contained the same provisions, as the statute of the 27 *Eliz.* contained. But even in that case, there would have been a very slight analogy between the statute of Winton and our statute relating to illegitimate children ; because our statute does not, in express terms, declare that the respondent shall not be liable, unless the complainant charge him in the time of her travail. It therefore seems to us, that the English decisions upon the statute of hue and cry, when attentively examined, have a very slight bearing upon the question now before us.

The real inquiry in this case is, what is the true intent and meaning of the statute ? and in this enquiry the common sense and the common understanding of men is a safe guide. We cannot assent to the construction of the statute, for which the respondent contends ; because it is not consonant, in our belief, with the general and uniform understanding of the community upon the subject ; because it makes the liability of the respondent in these cases depend not on the fact of his being the father of the child, but upon the particular manner of proving the fact ; and because, in our opinion, the circumstances, which it is contended are essential to be alleged, in order to charge the respondent, were intended by the legislature merely as prerequisites to the competency of the complainant as a witness in the cause. We think it was the intention of the legislature, that the father of the child should be charged, simply because he was the father.

A construction very similar to the one, we are disposed to give this statute, has been put upon the act to restrain the taking of unlawful interest. That act declares, that if the debtor shall come into court and offer to make oath, and if required, actually swear, that more than six per cent. has been received or secured, the court shall deduct, from the sum lawfully due, three times the amount of the unlawful interest ; unless the creditor will swear, that no more than lawful interest has been received or secured. Upon this statute, it has never been supposed, that the power of the court

R. R.
vs.
J M.

to make the deduction depended upon the mode of proof; but it has been repeatedly decided, that, when the usury was found by the verdict of a jury, the deduction might be made.

This being the opinion of the court, in relation to the motion now before us, it is ordered, that the respondent give security to save the town of C. harmless, and that he pay the costs of this prosecution.