## MARSTON *vs.* JENNESS.

A complaint under the "act to provide for the maintenance of bastard children," is a civil suit, although the forms of proceeding are, in some particulars, of a criminal character.

A former examination before a magistrate, and a discharge upon a complaint under this act, constitute no bar to further proceedings; as the magistrate has, in strictness, no power to try, but only to examine, and discharge or bind over.

The essence of a plea of *autrefois acquit* is, that the respondent must have been acquitted, not only in due form, but by a court of competent jurisdiction to make a final disposition of the case.

It is no objection to the proceedings, that the complainant did not appear in person before the magistrate, and testify, upon the examination of the respondent.

COMPLAINT, under the "act to provide for the maintenance of bastard children," which came before the court upon an agreed statement of facts.

It appeared, that on the 13th day of January, 1840, the complainant entered her complaint before a justice of the peace for this county, charging the respondent with being the father of a bastard child, with which she was then pregnant. The magistrate issued process, convened the parties before him, and upon a hearing rendered judgment that the respondent ought not to be held to answer further to the complaint, and that he be discharged from arrest.

On the 28th day of the same January the complainant made another complaint, before another justice of the peace for this county, against the respondent, for the same cause. The magistrate, upon a hearing, rendered judgment that the respondent ought to be held to answer further to the complaint, and ordered him to recognize for his appearance at the next term of the court of common pleas for this county. The complainant did not appear in person before the magistrate, nor was she present at the examination of the respondent.

It was agreed that if, upon these facts, the process could be further maintained, the proceedings were to be transferred

to the common pleas, for trial ; otherwise judgment was to be rendered for the respondent.

*James Bell*, for the complainant.

*Bartlett*, for the respondent.

GILCHRIST, J.   Upon the facts agreed in this case, a question arises as to the effect of the former examination and discharge by the magistrate ; and in order to determine this point it may be necessary to inquire into and settle another question, which is, whether the proceedings under this act are of a civil or criminal character, and whether the final order of filiation that may be made in such cases, is in the nature of a punishment for an offence, or merely of an indemnity against certain pecuniary losses that may be sustained by the town chargeable with the support of the child.

The fourth section of the act provides, that the person found chargeable shall be ordered to pay such sums to the mother, or, where the court deem it proper, to the selectmen of the town liable to maintain the child, to be applied for its maintenance, as the court may judge reasonable ; and he shall also be ordered to pay the costs of the prosecution. And he may be further ordered to give security to save the town harmless from the maintenance of the child.   If he refuse to obey the order of court, he may be committed to prison until the same be obeyed.

The fifth section provides, that if the complainant shall abandon her complaint, the town may be admitted to prosecute, and procure an order upon the respondent to give security as aforesaid.   If he be found chargeable, he shall be ordered to give security to save the town harmless.   If not chargeable, he shall be allowed costs, and have execution therefor against the town.

The seventh section provides, that if any person committed to prison under this act be poor and unable to pay such

sums, or procure such sureties as the court shall order, the court may discharge him upon such conditions as they think proper.

It is to be observed, that the object of all the foregoing provisions is, to cause the respondent to furnish an indemnity to the town against such expenses as may be incurred by supporting the child, and to pay such sum to the mother for its maintenance as may be deemed proper by the court. If the complainant should not be pregnant, although the fact of illicit intercourse should be proved the respondent would be released from his liability to pay any sums to the mother, or furnish any security to the town. And this is a strong argument for the position that the act is not to be construed as imposing any punishment upon the respondent, or as at all penal in its character. If he be committed, and be poor and unable to comply with the order of court, he may be discharged from imprisonment by a provision similar to that which authorizes the court of common pleas to remit fines and costs imposed upon persons in gaol upon convictions of criminal offences. But the order of court is not a sentence upon a conviction for a crime. It imposes no disability whatever. It does not interfere with the political or legal rights of the respondent. The power of pardoning offences is by the constitution vested in the governor and council. If the verdict of the jury establish the fact that the respondent has committed a crime, such offence may be pardoned by the executive. But the executive could interfere, not to restore to the party the rights of which a conviction has deprived him—for he has incurred no disability—but merely to annul the order of court, that he should furnish security, and that in all cases, whether the respondent were or were not unable from poverty to comply with the order. It will hardly be contended that the respondent is a criminal, in a sense which authorizes the interference of the executive, when such a result would follow, so entirely opposed to the beneficial operation of the statute.

Marston *v.* Jenness.

It is further to be remarked, that the offence against religion and good morals which has been committed by the respondent, is punishable by a separate statute. The crimes of adultery and fornication are punishable by virtue of the second and fourth sections of the act of 1829. 1 *N. H. Laws* 147. And these provisions seem to give additional support to the position that the object of the act under consideration was not in any degree the punishment of offences.

In the case of *Hill* vs. *Wells*, 6 *Pick. R.* 104, Mr. Justice Morton analyzes, with great clearness, the proceedings upon a complaint of this description, and points out those particulars which partake of a civil character, and those which are more analogous to criminal prosecutions. The first and principal question before the court was, whether the municipal court, which had "cognizance of all crimes and offences committed within the town of Boston," had jurisdiction of cases arising under the bastardy act. In this opinion it is said, that "this process being neither wholly civil nor wholly criminal, but having many of the features and incidents of each, we are left to determine, from the manner in which the legislature has treated it, whether they intended to include it in one or the other class of suits. And they might well, in some respects, treat it as a civil, and in others as a criminal suit."

After stating that in the ancient statutes it is classed with "crimes and offences"; that in 1692 the provincial legislature included provisions in relation to bastardy in "an act for the punishing of criminal offenders," and that cognizance of this subject has, for nearly two centuries, been vested in a court of criminal jurisdiction, the opinion of the court is declared to be, "that in the transference of the powers of the court of sessions to the municipal court, by the act of 1799, the legislature intended to include all cases arising under the statute of bastardy."

We see no reason to doubt the correctness of this opinion; and yet it does not follow that because a court of criminal

jurisdiction has cognizance of such a complaint it is a criminal proceeding, in the ordinary and legal sense of the word. "It has many of the properties and characteristics of a criminal suit. It is founded upon a complaint made under oath. It is commenced by a criminal capias or warrant. It is returnable immediately upon the arrest of the defendant. He is not entitled to any previous stated notice, as in civil actions. It is returnable to a court of enquiry. The officer making the arrest cannot take bail. The defendant is bound to answer *instanter* upon being brought before the magistrate ; and, if there is probable cause for the prosecution, he is bound over for trial, and upon his failure to give bonds he is committed."

So, many of the rules which govern civil actions are applicable to it. It is commenced by and in the name of an individual, and not in the name of the state. It may be amended, as in civil suits. Although the complainant is a competent witness, she cannot be compelled to make complaint, or to testify in the cause. The defendant is not arraigned, but appears and pleads by attorney ; and, if he is discharged, is entitled to costs, as the prevailing party. The object of the suit is the redress of a civil injury. It is to compel the putative father to aid the mother in the support of the child, and to provide security to the town liable to maintain it. These characteristics of the proceedings are enumerated in the case of *Hill* vs. *Wells*, above cited.

It is evident, we think, from these considerations, that the object of the statute is not to impose a punishment for an offence, but to redress a civil injury. For the purpose of affording this redress, the legislature, as they undoubtedly may in all cases of civil injury, have deemed it expedient to authorize the employment of process usually applicable to criminal proceedings alone. But the process is merely the form by which the redress is sought. The purpose to be obtained is an indemnity. As soon as this indemnity is furnished the object of the law is satisfied, without affixing any stigma

upon the character of the respondent, as in criminal convictions. And in other states it is regarded as a civil remedy. *Mariner* vs. *Dyer,* 2 *Greenl.* 165 ; *Hinman* vs. *Taylor,* 2 *Conn.* 357.

We are, therefore, of opinion that the rules of civil proceedings are applicable to complaints under this act, and that they are substantially civil suits, although some of their forms are adopted from the criminal law.

Such being our views, the other question, whether the former examination and discharge are a bar to these proceedings, becomes here of little consequence. But it is very clear that they constitute no bar, even if this were strictly a criminal process for the punishment of an offence. The 16th article of the bill of rights provides, that " no subject shall be liable to be tried, after an acquittal, for the same crime or offence." Has there been "an acquittal" in this case ? A *nolle prosequi* entered on an indictment by the prosecuting officer, is no bar to another indictment for the same offence. *Commonwealth* vs. *Wheeler,* 2 *Mass. R.* 172. So, whenever an indictment, whereon a man is acquitted, is so far erroneous that no good judgment could have been given against the defendant, the acquittal is no bar, because, in apprehension of law, the party was never in danger. 2 *Hawk. P. C., c.* 35, *s.* S. So, where the first indictment was erroneous, the plea of *autrefois acquit* is no bar to a second indictment. *The People* vs. *Barrett,* 1 *Johns.* 66. And where the jury cannot agree on a verdict, they may be discharged, and the prisoner may be put on his trial before another jury. *Commonwealth* vs. *Purchase,* 2 *Pick.* 521. These cases—and there are many more to the same point in the books—sufficiently show that even a trial, and a verdict of not guilty, are not always a bar to another indictment, trial and conviction. This is not the case where the magistrate has power to try the defendant, and in his discretion, upon the evidence, to acquit, or convict and pass sentence ; for the statute provides that he is to bind the respondent to appear at the next term

of the court of common pleas, to answer such complaint, and abide the order of court thereon. An acquittal presupposes a trial. But here has been no trial whatever. The magistrate has no power to try, but only to examine, and ascertain if there is sufficient cause for putting the respondent upon trial before a court competent to make a final disposition of the complaint. As he has no power to try, it follows that he has no power to acquit, in the legal sense of the word. The essence of the plea of *autrefois acquit* is, that the defendant was *legitimo modo acquietatus*, not only in due form, but by a court of competent jurisdiction to try him. The opinion of a court of enquiry, who have no final jurisdiction in the case, is conclusive upon no one. If it were, no party could be indicted against whom a former grand jury had refused to find a bill, or whom a magistrate had refused to bind over. Besides the dangers of collusion, and improper influences, and the probability that in many cases the guilty party would cause a complaint to be made against himself, returnable before a magistrate supposed to be favorably inclined towards him, such a course would impede the administration of criminal justice, by ousting the higher courts of their jurisdiction, and weakening the confidence of the public in the proper execution of the laws, by dispensing with the trial by jury in criminal cases.

It appears from the case, that the complainant did not appear in person before the magistrate, and that she was not present at the examination of the respondent. But she made oath to the complaint, and charged the respondent with being the father of the child, according to the statute. It might have been supposed that she was incompetent to testify, either because she had not declared the respondent to be the father of her child during the time of her travail, or because she had not been constant in her declarations, or for some other sufficient reason. Her omission to testify might have been sufficient, in the opinion of the magistrate, to authorize him to discharge the respondent; but as he has bound

him over, it affords no reason why the case should not now be transferred to the common pleas, for trial. There are certain cases where, the complainant being incompetent to testify, the town may come in and prosecute. The liability of the respondent depends upon the fact that he is the father of the child, and not upon the particular manner of proving it ; and if other and sufficient evidence is offered than that of the complainant, he is to be bound over. *R. R.* vs. *J. M.,* 3 *N. H. Rep.* 143.

We are, therefore, of opinion that the case should be transferred to the court of common pleas, for trial.