## MARSTON *vs.* JENNESS.

In a prosecution under the Bastardy Act, it is no objection to a witness, that he is the father of the complainant.

Where a complaint under the Bastardy Act set forth that the child was begotten on the 15th day of *May last,* and was not dated, but was sworn to on the 13th day of January, A. D. 1840, it was *held* that the time was alleged with sufficient precision.

Marston *v.* Jenness.

*Where the statute provided, among other conditions to authorize the complainant to testify, that "she shall have continued constant in such accusation," it was held to be a sufficient compliance with the statute, if she had not been proved to be inconstant, and that the burthen of proving her inconstancy was upon the respondent, in order to incapacitate her from being a witness.*

Complaint, under the act to provide for the maintenance of bastard children.

The complaint was not dated, but was sworn to on the 13th day of January, A. D. 1840, as appeared by the certificate of a magistrate; and it set forth that the child was begotten on the 15th day of *May last*, &c.

Upon the trial, the jury found the respondent chargeable, and he moved to set aside the verdict, and for a new trial, for the following reasons:

1. Because the complainant was improperly admitted as a witness upon the trial; she not having, in her complaint, stated the time when the child was begotten, and no evidence having been offered that she had continued constant in her charges against the respondent.

2. Because the father of the complainant was admitted as a witness for the prosecution.

*Emery,* for the respondent, argued, that as the admission of the complainant to testify was in derogation of the common law, all the conditions required by the statute should be strictly complied with; and he referred to 5 *Dane's Abr.* 244; 5 *Mass. R.* 114; 7 *Mass. R.* 202; 5 *Burr.* 543; 3 *Wend.* 494; *Dwarris on Stat.* 748; *Cowp.* 26; 3 *N. H. Rep.* 81; 4 *N. H. Rep.* 478; and he said, that the strictness required in criminal proceedings had been applied to questions arising under the bastardy act; and referred to 21 *Pick.* 132, 20 *Pick.* 99, 5 *Pick.* 63, 2 *Mass.* 441, 5 *Mass.* 517. He also contended, that evidence must be offered to prove that the complainant had remained constant in her accusation, before she could testify; and referred to 3 *N. H. Rep.* 140; 3 *Fairf.* 27.

To the point that the time was not sufficiently alleged, he

cited *Ch. Cr. Law* 179, 231, and argued that the oath was no part of the complaint.

*Christie,* on the same side, referred to 8 *Pick.* 561–2, and 1 *Greenl.* 304, on the question whether evidence of her constancy were necessary ; and contended that it must at least appear from the testimony of her intimate friends that she had never accused any person but the respondent.

*Bell & Tuck,* for the complainant, on the question of her constancy, referred to the language of Parsons C. J., in *Drowne* vs. *Stimpson,* 2 *Mass. R.* 441, who says, that "at least, there should be no proof of inconstancy."

As to the allegation of time, they referred to *Tillson* vs. *Bowley,* 8 *Greenl.* 163.

GILCHRIST, J.　No reason is given by the respondent why the father of the complainant is an incompetent witness. He is not a party to the record, is not infamous, nor interested in the prosecution, nor are there any reasons of public policy against his admission.　His credibility is a question for the jury, and they have it in their power to make what deductions they please from his credit, on account of his relationship to the complainant.　We think this exception must be overruled.

Two exceptions are taken to the competency of the complainant as a witness, one of which is that there was no evidence that she had continued constant in her charges against the respondent.

The third section of the act of June 28, 1827, (*N. H. L.* 296, *Ed. of* 1830,) which is now in force, provides that where the complainant shall have voluntarily made her complaint on oath, charging the respondent with being the father of the child, and stating the time when, and the place where the same was begotten, and shall have declared in the time of her travail the same person to be the father of the child, to

the person attending her, if any person may have attended her at the time, and shall have continued constant in such accusation, she shall be a competent witness on the trial.

It is contended by the respondent, that the constancy of her accusation is to be proved by the testimony of other witnesses than the complainant ; and that she is not admissible as a witness, unless it be proved affirmatively, by other evidence than that contained in her complaint, that she has accused the respondent of being the father of her child.

A provision, not essentially different from that in the statute above stated, is to be found in all our legislation upon this subject. The fourth section of the act of the 13 *Wm.* III., *Province Laws* 17, provided that "he that is accused by any woman to be the father of a bastard child begotten of her body, *she continuing constant in her accusation, &c. &c.* shall be adjudged the father thereof."

The provincial act remained in force until the passage of the act of the 11th of February, 1791, although it was not expressly repealed until the 20th of June, 1792. The act of 1791, after requiring a complaint on oath before a magistrate, provides, as a further pre-requisite to her competency, that "she shall continue constant in such accusation." *N. H. Laws* 352, (*Ed. of* 1815.) This act was not repealed until the passage of the act now in force.

There is, then, no express provision in any of the former statutes on this subject, which requires the complainant to make any other statement of the paternity of the child, than that contained in her complaint before the magistrate ; and we can derive no aid from their language on this subject, because the expressions used in them are substantially like the language of the present act. The counsel for the respondent has referred us to several authorities on this point.

There are some remarks of Parsons, C. J., in the case of *Drowne, Plff. in Error*, vs. *Stimpson*, 2 *Mass. R.* 441, which appear to support his view of the question. In that

Marston v. Jenness.

case it appeared that the complainant did not charge the respondent, in the time of her travail, with being the father of the child, but declared that she did not know who was the father ; and that a short time after her delivery she made oath that Drowne was not the father, but another man.  She afterwards made a complaint, stating that Drowne was the father, and was admitted to testify on the trial, and a verdict returned against Drowne.  Upon these facts, it was held that she was not a competent witness.  The chief justice then proceeds to say : " There has been some question whether the complainant may not be sworn, and if by her testimony she prove that these prerequisites have been complied with, she is not within the statute.  We are satisfied that she is not, for several reasons.  One is, that the prerequisites thus testified to by her, have no tendency to support her credit.  Another is, that although made a competent witness by the statute from necessity, yet her testimony ought not to be given to facts equally within the knowledge of other persons not interested."

The question in the case was, whether, as she had not charged the respondent during her travail, and had charged another person, and so had not continued constant in her accusation, she was competent to testify, and the prosecution was maintainable.  But it was not necessary to settle the question, whether, if she had charged the respondent according to the statute, there must be affirmative proof from other sources, that she had continued constant in her accusation. And the chief justice, in pronouncing the judgment of the court upon the questions that arose on the case, says : " She must have remained constant in her accusation, *or at least it must not appear that she has been inconstant.*"  The marginal abstract of the case states that " it must appear that the mother charged him in the time of her travail, and continued constant in her accusation, and *these facts* must be proved by other testimony than her own, before she is to be received as a witness."

But the question before us did not arise in that case ; and even if the eminent judge alluded to intended to intimate an opinion favorable to the position now taken by the respondent, which we consider somewhat doubtful, we do not think it a sound construction of the statute.

There are also some remarks by Richardson, C. J., in the case of *R. R.* vs. *J. M.*, 3 *N. H. Rep.* 140, which appear to warrant the position taken by the respondent. One of the exceptions taken in that case was, that the complaint did not contain an allegation that the complainant had been constant in her accusation. This was overruled. But the only question before the court being whether the complaint should contain certain allegations, the chief justice proceeds to say that "it must be shown that she in the time of her travail declared the respondent to be the father of her child, and that she has been constant in her declarations. All this must be shown before she can be permitted, while she has an interest in the cause, to be a witness. Her credit must be fortified by proof of these circumstances, before she is entitled to testify in her own cause." These remarks were not made because the admissibility of the complainant was the question for decision, but incidentally, and in illustration of the views of the court upon the matter before them. They cannot, therefore, be regarded as settling the question before us, for future cases ; and the result at which we have arrived is, that if the learned judge meant to say that the complainant was an incompetent witness, until she had produced affirmative evidence that she had been constant in her declarations, such a construction is not rendered necessary by the words of the statute, and is exposed to many inconveniences in practice.

What affirmative evidence is to be required that the complainant has remained constant in her declaration ? If she has charged the respondent on oath with being the father of the child, and has made such a declaration to the person attending her, if there were any such person, in the time of her

travail, she has certainly not been inconstant in the absence of other evidence.

If it be once held that she must have declared who was the father of the child, to some disinterested person who could testify to her declaration, several other questions, which arise out of this position, must be determined. Is a single statement sufficient evidence of constancy? If not, how many times must it be repeated? This must be left entirely to the discretion of the court. If she has repeatedly stated that the respondent was the father of the child, and has once stated that he was not, is this a sufficient inconstancy to authorize her rejection? And if she were compelled by threats, as was the case in *Drowne* vs. *Stimpson*, before cited, to be inconsistent on one occasion, is evidence of such threats admissible in explanation? It is evident that it would be difficult to establish a satisfactory rule on this point, which would be clearly authorized by the words of the statute, and that such a duty would more properly devolve upon the legislature.

Again, to whom are these disclosures to be made, which are to prove her constancy? The respondent says, to some intimate friend, at least. But who is an intimate friend for this purpose? What degree of relationship, or of acquaintance, is necessary in order to fit one to be the depository of such a revelation? What evidence of friendship are we to receive; how long must it have existed; is it a question of law, or of fact? Suppose there were no one who came up to the standard of friendship which we should establish, to whom, then, is the disclosure to be made, or is the complainant without remedy? She may have no acquaintances, even. Is she, then, to go into the highways, and confide her story to the first transient person she meets, and summon him, knowing nothing of his character or credit, to bear witness that she has complied with the statute? Suppose she has friends, will any thing excuse her omission to mention this matter to them? Any of the cases supposed might, natu-

rally enough, arise, and these suggestions show the impossi-
bility of establishing such a rule as the respondent contends
for, upon a rational and intelligible basis.   The reasoning of
the respondent, that her disclosure to third  persons is neces-
sary to sustain her credit, depends upon the presumption that
she is not worthy of belief  unless she makes it—a presump-
tion which, we think, we  have  no  right, in  the  absence  of
any statutory provision, to make.

We are, therefore, of opinion, that the complainant is con-
stant in her accusation, within the meaning of the statute, if
there be no evidence that she has been inconstant ;  and that
the burthen of proof is upon  the  respondent, to  show  the
fact of inconstancy, in order to incapacitate her from being a
witness.

The other objection to her admissibility is, that she has
not stated in her complaint the time when the child was be-
gotten.   The case finds that the  complaint was not dated,
but was sworn to on  the  13th day of January, A. D. 1840,
and that it set forth that the child was begotten on the 15th
day of *May last.*

We have already held, that a complaint under this act was
not a complaint for an offence.    *Marston* vs. *Jenness,* 11 *N.
H. Rep.* 156 ; and it follows  that  the  strictness usually re-
quired in criminal prosecutions  is not  requisite here.    But
even if it were, we think the time is alleged with sufficient
precision.   In an indictment, it is enough  if the time be
stated with such  certainty that no doubt can be entertained
as to the period really intended.   *Ch. Cr. Law* 180.   And
an indictment, laying an offence *on the tenth of March last,*
(if it may be ascertained by the style of the sessions before
which the indictment was taken,) is as good as if it had
shown the day and year, by expressly naming such a day of
such a month, &c.   *Hawk., book* 2, *ch.* 25, § 78.   In the
case of *Tillson* vs. *Bowley,* 8 *Greenl.* 163, a complaint under
the bastardy act was dated on the 7th of November, 1829,
and set forth that the child was begotten " on or about the

eleventh day of April," without stating the year. It is said by the court that "it was impossible to mistake what April was intended. When a month is referred to, it will be understood to be of the current year, unless, from the connexion, it is apparent that another is intended."

In the case before us, the complaint, whether dated or not, was of no validity until sworn to. The complaint and the oath, taken together, constitute a legal foundation for a warrant, and the oath is an integral part of the proceedings required by the statute. On the 13th day of January, then, she made oath that on the 15th day of *May last* the child was begotten. The meaning cannot be more clearly expressed by any language that occurs to us. We entertain no doubt that an indictment would be sufficient, in which, after a distinct statement of the time when it was found, an offence should be alleged to have been committed, for instance, on the first day of *January last;* for the time is rendered as certain as language will permit it to be, by a reference to the time when the indictment was found.

This exception, therefore, must be overruled.

*Judgment on the verdict.*