## SALLY K. LITTLE v. RUFUS DICKINSON.

A prosecution under the act to provide for the maintenance of bastard children is a civil suit.

It is a civil suit within the meaning of section 15, chapter 17, of the Compiled Statutes, which provides, substantially, that all actions, petitions, appeals and prosecutions in all civil cases, shall be commenced, entered and prosecuted in the respective districts of the county of Grafton, in the same manner as if each of the districts was a distinct county; and it should be entered in the one or the other of the districts, in the same manner as ordinary civil suits are entered.

Where a complaint under the act to provide for the maintenance of bastard children was made in a town in the Western Judicial District of the county of Grafton, alleging that the child was there begotten, but the defendant was ordered to give bond to appear at the court to be held in the Eastern District, and the complaint was entered in that district, and afterwards continued to the Western—*held*, that the entry in the Eastern District was erroneous, that the case could not be legally continued or transferred to the Western District, and that a motion to dismiss the action must prevail.

COMPLAINT, under the bastardy act, in which it is alleged that the child was begotten in Lyman, a town in the Western Judicial District, in said county.

The order of the magistrate before whom the respondent was brought, on the 8th day of November, 1853, was, that the respondent give bond to the complainant to appear at the court of common pleas then next to be holden at Plymouth, in and for the Eastern Judicial District, on the third Tuesday of November, then instant, and there answer to the said complaint and abide the order of the court thereon.

The respondent gave bond according to the order, and at said November term the complaint was entered; but the respondent did not appear at that term according to his bond, but made default.

It was agreed that the cause should be continued to the term of the common pleas next to be holden in the Western Judicial District, and that the default should be taken off if the respondent appeared at that term and complied with

such order of the court as might then be made for his future appearance.

At that term the respondent appeared and moved that the default be taken off, and it was done pursuant to said agreement. The respondent then moved that the action be dismissed. And the questions arising upon the motion were reserved and assigned to this court for their determination.

*H. Bingham,* with whom was *Livermore,* for the respondent.

The complaint in this cause charges the child to have been begotten in the town of Lyman, where the parties then resided, and have continued to reside until the present time; and we contend :

I. That the two judicial districts of Grafton county are two distinct counties, so far as all petitions, actions, appeals and prosecutions in civil cases are concerned. Comp. Stat. ch. 17, §§ 12, 13, 14, 15.

II. The bastardy act requires the respondent, when brought before the proper justice of the peace, upon the order of such justice, to give bond to appear at the court of common pleas next to be holden in the county where the offence is charged to have been committed. Comp. Stat. ch. 72, §§ 1, 2.

III. A complaint under the bastardy act is a civil suit. *Marstin* v. *Jenness,* 11 N. H. Rep. 156; *Low* v. *Mitchell,* 18 Maine Rep. 372. Being a civil suit, the respondent was erroneously bound over to appear in the Eastern Judicial District, and all the proceedings are void, and the motion must prevail.

*S. H. Goodall,* with whom were *Patterson,* and *Goodall & Carpenter,* for the complainant.

We say—I. The action is now legally and properly entered in the Western Judicial District of the county of Grafton, and there has been an appearance on the part of

the defendant generally in that district, after a special agree-
ment so to appear in the Western Judicial District; and
that must be held to be a waiver of all previous defects in
the process; if, indeed, there is any defect, which we deny.

By appearing generally he admits the regularity of the
entry in the court in the Western Judicial District, and can-
not now, by motion, have the action dismissed, when it is
in the proper court.

II. We say that the binding over to Plymouth was a
good and valid binding over. We submit the question
whether a complaint under the bastardy act can be compre-
hended under the 15th section of chapter 17 of the Com-
piled Statutes. Does that section reach the case of a person
bound over to appear by a justice of the peace? If it does
not, then the entry at Plymouth was right; for all other
cases (than those mentioned in the fifteenth section) are left
to be entered in the whole county. No harm can be done
to any one. The action and the defendant are in the proper
court. The respondent has abided the order of court and
his agreement at the Plymouth court, and has appeared in
the Western Judicial District, and it is now too late to ob-
ject by this motion to dismiss. Comp. Stat. ch. 17, § 16.

The rights and duties of officers are not to be affected ex-
cept so far as is expressly provided in the seventeenth chap-
ter; and there is no provision there that a justice shall bind
over to the Western Judicial District in contradistinction to
the Eastern Judicial District, in any case whatever.

It is not expressly provided in such a case as this, and it
is therefore left open to the whole county under the general
provision of the second section of chapter 72 of the Com-
piled Statutes, that the respondent shall be bound over to
the next court within and for the whole, not a part, of the
county.

The form of the action is criminal, and it is to be carried
through in that form; first complaint, then warrant, then
hearing before justice, then binding over to the next court

within and for the county; all is to be done in the criminal form, although the action is civil in its nature. And we say it is to be entered, as criminal actions are entered, at the next court in the county. The legislature could adopt such form and process as they thought proper, and they have ordered the form to be criminal, although the action in its results may be civil.

EASTMAN, J. The seventeenth chapter of the Compiled Statutes provides for the division of the State into counties, and gives their boundaries. The twelfth section of the chapter enacts that the county of Grafton shall be divided into two judicial districts, to be known by the names of the Eastern and Western judicial districts of the county of Grafton. The thirteenth and fourteenth sections enumerate the several towns comprising those two respective districts; and the town of Lyman, where this complaint was made, and where the offence was alleged to have been committed, is in the Western district.

The fifteenth section of the chapter is as follows: " All actions, petitions, appeals and prosecutions in all civil cases, shall be commenced, entered and prosecuted in the court of common pleas for said districts, in the same manner they would be, if each of said districts was a distinct county."

Was this complaint a civil action or prosecution within the meaning and intent of this fifteenth section of the statute? If so, it should have been entered and prosecuted in the Western Judicial District; the town of Lyman being in that district.

In *Marstin* v. *Jenness*, 11 N. H. Rep. 156, the question as to the character of the proceedings under the bastardy act was fully examined; and it was there decided that a complaint under the act to provide for the maintenance of bastard children is a civil suit, although the forms of proceeding are, in some particulars, of a criminal character. It has also been so held in Maine and Connecticut. *Mariner* v.

*Dyer*, 2 Greenl. 165; *Hinman* v. *Taylor*, 2 Conn. Rep. 357.

Although the illegal begetting of a child is an act that may be visited criminally, by a prosecution for adultery or fornication, and the putative father may be thus punished by fine and imprisonment, yet such proceedings give no indemnity to the unfortunate mother for the support of the child; and the criminal proceedings are disconnected from, and independent of, all process or judgment under the bastardy act. A complaint under this act is not made in the name of the State, as is required where a crime, strictly speaking, has been committed; but in the name of an individual. It is, moreover, amendable, as in civil suits. The defendant is not arraigned, but appears and pleads by attorney; and if he is discharged, he is entitled to costs as the prevailing party. The object of the suit is redress, and indemnity to the mother for the support of the child; and also to provide security to the town liable to maintain it. These are all characteristics of civil proceedings, and in no way appertain to a criminal prosecution. *Marstin* v. *Jenness*, 11 N. H. Rep. 160.

To give greater efficiency to the process and protection to the mother, the legislature has provided that the proceedings may, to a certain extent, be criminal in form, and that the body shall be holden for the enforcement of the judgment; but in all other respects it is a civil proceeding for pecuniary redress. An assault and battery is an offence for which criminal proceedings may be instituted and the offender punished. The injured party has also a remedy by civil suit, if he sees fit to pursue it; and the body is holden for the collection of the judgment. But the two prosecutions are different and distinct, although founded upon the same act; and yet they are not more distinct in their objects and effects than an indictment for adultery and a complaint under the act to provide for the maintenance of bastard children.

Upon a review of the grounds taken in *Marstin* v. *Jenness*, where the question was so well discussed, and after consid-

erable reflection upon the matter, we entertain no doubt that the proceedings in this case must be regarded as civil, within the meaning of the fifteenth section of the act before cited. It was the intention of the legislature that all actions between party and party, all suits and prosecutions for the recovery of money, or damages as redress, should be commenced, entered and prosecuted in that district in which the particular town was situated, in the same manner as if each of the districts was a distinct county.

This prosecution was commenced by Sally K. Little against Rufus Dickinson, in the town of Lyman, in the Western Judicial District, upon a complaint under the bastardy act, in which it was alleged that the child was begotten in Lyman. It was a prosecution by the plaintiff against the defendant, to obtain that pecuniary redress which the act gives for the injury sustained; and was rightfully commenced in that district. But being a civil prosecution, it should also have been entered and prosecuted in that district, which was, *pro hac vice*, the county having jurisdiction of the cause; and if at the time the prosecution was pending in the Eastern district a motion had been made to dismiss the action, it must have been granted, for the court in that district had no jurisdiction of the matter.

Unless, then, the transfer of the cause from the Eastern to the Western district, and an appearance in the Western, can cure the defect, the motion must now prevail. And we do not discover any way in which the defect can be cured by the transfer. The Western Judicial District has never obtained jurisdiction of the cause. It has never been legally entered there. The agreement that the action should be continued to the Western district was undoubtedly made under the impression that the prosecution was a criminal one. It is difficult to see how there could have been any other understanding; for the continuance of a civil action from one county to another, or from one district to another, cannot give such latter county or district the power to en-

tertain and try such suit. The writ or process by which the action would have been entered in one county or district, would show at once that no proceedings could be had upon them in another county. There would be no process in that county to act upon; no foundation for the suit; and no judgment could be made up with such a process to start with. The bare statement of the proposition would seem to be sufficient to show its utter impracticability and illegality.

We should have been quite willing to have arrived at a different result in a prosecution of this kind, but the matter appears too clear to admit of doubt.

*Motion granted.*