## OTIS *vs.* STRAFFORD.

Towns are liable for the support of paupers only so far as compelled by statute.

No claim can be sustained against any town except through the action of the overseers of the poor of such town, or where their poor, standing in need of relief, may happen to reside in some other town, and be supported by the overseers of the poor of such town.

No individual can recover against a town for any support rendered such poor persons, on any implied contract, by the overseers of the poor of such town.

Where overseers of the poor do not make the provision required by statute for persons who are poor and stand in need of relief, they are liable for such neglect of official duty.

ASSUMPSIT, for the support of a pauper, named Molly Otis, from April, 1836, to June 30, 1837.

The case was tried on the general issue, and a verdict was found for the plaintiff.

It was admitted that the pauper had her settlement in Strafford at the time the support was furnished, and was poor and unable to support herself, and that the plaintiff maintained her during that time. It appeared that the pauper was the sister of the plaintiff, and from imbecility of mind, and other causes, was wholly incapable of taking care of herself; that she had lived in the family of the plaintiff, and been maintained by him for many years—that at length, finding her maintenance burthensome, in April, 1836, he applied to one of the selectmen of Strafford, in writing, re-

Otis *v.* Strafford.

questing that they would take care of her, and notifying them that he was unable to support her any longer. In the month of January, 1837, the plaintiff took the pauper to the house of one of the selectmen, to be taken care of by them, and the next day she was permitted to return to the plaintiff's house, not far distant. In March, 1837, a notice in writing from the plaintiff was served on the selectmen, informing them of the inability of the pauper to support herself, and that he should require of the town pay for her support.

On all these occasions the selectmen utterly refused to support the pauper, or furnish any supplies for her relief, on the ground that many years before that time the plaintiff had given his father, Nicholas Otis, a bond for the support of said Nicholas and wife, and said Molly and Abigail, his sisters, during their lives.

The evidence of the plaintiff's having given such a bond was derived from the admissions of the plaintiff himself, from which it appeared that sometime previous to 1792 he went to live with his father, and at that time gave a bond to the effect above mentioned, and that he received some assurances from his father of his having the farm on which they lived, but on what conditions those assurances were made did not appear—That sometime after this, the plaintiff becoming dissatisfied with his claim or title to the farm, his father gave him a deed of it, but the bond mentioned was not taken up at the time. In some instances the plaintiff said he gave the bond, and that it was not given up; in others, that he did not know what had become of it; and in others that the giving of the deed destroyed the bond.

In order to shew that the contract on which the bond was given had been cancelled by the parties, the plaintiff produced an office copy of a deed from said Nicholas Otis, the father, to the plaintiff, of the farm on which they lived, dated the 10th day of April, 1792; also, an original lease, dated the same day, purporting to be duly executed by the

plaintiff to said Nicholas, whereby the plaintiff demised the farm to said Nicholas during his and his wife's lives.

It was proved that one of the subscribing witnesses to the lease was dead, and that the other, if living, resided in Vermont; and that the lease was found recently among the papers of the plaintiff. It also appeared that said Nicholas died about sixteen years ago, and his wife about seven years ago.

Upon this evidence the court instructed the jury, that if they were satisfied that the plaintiff made application to the selectmen, as before stated, and they refused to furnish any relief to the pauper, they would find for the plaintiff, unless they should also be satisfied that there was a bond given by the plaintiff to his father, as before mentioned, which remained uncancelled; in which case they would find for the defendants; and that, should they be of opinion that it was the understanding, intention and design of the plaintiff and his father, in executing the deed and release before named, that the bond should be rendered invalid and annulled, said bond, although not given up, was thereby rendered void and of no effect.

To which instructions the defendant excepted, and moved for a new trial.

*Christie*, for the defendant, cited 14 *Mass. R.* 396, *Miller* vs. *Somersett;* 12 *Ditto* 333, *Mitchell* vs. *Cornville;* 3 *Greenl. R.* 172, *Canaan* vs. *Bloomfield;* 1 *N. H. Rep.* 52, *Mace* vs. *Nottingham - West;* 1 *Wheaton's Selwyn* 43.

*Hale*, for the plaintiff.

UPHAM, J. It is well settled that towns are not liable by the common law to support paupers, and that no implied promise can arise against them for such support. The authorities cited by the defendant's counsel clearly sustain this position.

The obligation resting upon the town, then, is wholly under the provisions of the statute ; and the sole provision of the statute in this respect is, that when any person in any town in this state shall be poor and unable to maintain him, or herself, such person shall be relieved and maintained by the overseers of the poor of the town where such person shall happen to be ; and in case such town is not by law chargeable with the maintenance of such poor person, they may by action recover of the town or person chargeable by law, all sums expended for the relief of such person.  1 *Laws N. H.* 305.

Towns can thus be made liable only through the action of their own overseers of the poor, or the overseers of the poor in those towns where persons chargeable to them may happen to reside and be relieved.   No individual can recover against a town for any support rendered such poor person except when expressly employed by the overseers of the poor of such town.   9 *N. H. Rep. 55, Woodes* vs. *Dennett ;* 3 *Ditto* 290, *Lee* vs. *Deerfield.*

The whole provision for the relief and maintenance of the poor is thus left entirely to the official responsibility and duty of the overseers of the poor ; and for any gross neglect of such official duty they are clearly liable.  6 *Cow.* 276, *Minklear* vs. *Rockfeller ;* 5 *Cowen* 654, *Flower* vs. *Allen.* They are not liable, however, to remunerate any charitable individual who may relieve such poor person on account of such neglect, which is the ground on which the plaintiff attempts to sustain this action.  Their liability is solely to public process against them for neglect of public official duty.

It becomes unnecessary, then, to go into an examination of the evidence as to any subsisting bond given by the plaintiff, to support the pauper—or, as to the competency of the evidence offered to show a discharge of such bond.  Had the case rested upon this point we should have found no difficulty in sustaining the ruling of the court.   The difficulty lies beyond this.   No person, on his mere individual

responsibility or capacity, can sustain a claim against a town for relief to poor persons, even where the overseers of the poor have improperly neglected to render such support. Any authorities to the contrary rest solely on the particular provisions of their statutes in other states. 12 *Mass. R.* 333, *Mitchell* vs. *Cornville.*

*Nonsuit entered.*