## PETERBOROUGH *vs.* LANCASTER.

Where money is paid with a full knowledge of all the facts, or with the means of such knowledge, it cannot be recovered back on account of the payment having been made in ignorance of the law.

But if it be paid in ignorance of a material fact, and without reasonable means of ascertaining it, it may be recovered back.

When money is paid, it will be presumed to have been paid with a full knowledge of all the facts, in the absence of evidence to the contrary.

If a town, not liable for the support of a pauper, pay for such support upon request by another town, what would be the effect of such payment, *quære?*

A town not chargeable with the support of a pauper agreed with a town by whom the pauper had been maintained, to pay for the future support for a specified time. In an action against the town where the pauper had a settlement—*Held,* that such agreement was no answer to the suit.

A town, not chargeable with the support of a pauper, paid to the plaintiff by whom the pauper had been relieved the sum expended for that purpose. In a suit against the town where the pauper had a settlement—*Held,* that as the plaintiff had not been called upon to repay the sum expended, it could not be recovered of the defendant.

If a pauper have not a settlement in a town, the selectmen cannot make the town chargeable therefor by their agreement with another town to pay for his support.

A notice of relief furnished a pauper was not dated, but was served on the 11th of April, 1839, and stated that on the 15th day of January, *last past,* the relief was furnished, and that the pauper had been supported since that time.—*Held,* that the time when the support was rendered appeared with sufficient precision.

Under the 11th section of the act of December 16th, 1828, a notice of supplies furnished a pauper must be returned to the clerk's office within twenty days from its service ; otherwise an action for the sum expended cannot be maintained.

Where the writ described the relief as "board and *washing,*" and the notice de-

scribed it as " board and *nursing*," it was—*Held*, that the variance was fatal, and that the plaintiff could not recover.

A copy of an original warrant for a town meeting in the year 1805 was produced, on which there was a seal. The town clerk, who found the original among the papers in his office, could not state that there was a seal on it when he found it, but he had recently lent it to the selectmen, and when they returned it to him there was a seal on it. The record did not show that it was sealed. Two of the signatures to it, of persons styling themselves selectmen, were proved to be genuine. The warrant was posted up, the meeting was held, and the record showed that an officer was elected and sworn. The clerk for the year 1805 was dead.—*Held*, that from these facts, after the lapse of thirty-eight years, the jury might presume that the meeting was duly held.

A person does not lose his settlement in a town in this state by acquiring a settlement in another state.

ASSUMPSIT, for the support of one Esther Moore, a pauper, alleged to have her settlement in Lancaster, from the 15th day of January, 1839, to the 16th day of December, 1840, the date of the writ.

At the trial upon the general issue it was admitted that the support was furnished to the amount of $192.25, and that the pauper stood in need of relief. It appeared that after the town of Peterborough had begun to support the pauper, supposing that she was chargeable to the town of Northumberland, that town was notified that the support was furnished, and thereupon paid the plaintiff the sum of $33.42, a part of the amount sought to be recovered in this action, and being the amount expended from the 15th of January, 1839, to the 4th day of May, 1839. Northumberland also agreed with Peterborough to support the pauper from the 4th day of May, 1839, to the 4th day of December, 1839. The amount expended during that period was $45.85, and is part of the sum sued for in this action. The contract was in writing, and signed by the selectmen of Northumberland, but no part of the last mentioned sum has been paid by that town. About the 10th, 11th, or 12th of November, 1839, the selectmen of Northumberland notified the plaintiff by letter, that that town was not liable for the support of the pauper, but that the defendant was liable.

They soon afterwards wrote the plaintiff again, declining to support the pauper longer, and requesting the selectmen to hold good the claim of the town upon Lancaster.

It was agreed that prior to the 21st day of November, 1831, the pauper had a settlement in Peterborough; and it appeared that on that day she was married to one Robert Moore, who then lived at Lunenburgh, in the state of Vermont, where he resided from April, 1806, until his death in the winter of 1832–3. For more than a year prior to his residence in Lunenburgh he lived in Lancaster, viz., from February, 1805, to April, 1806.

The plaintiff offered evidence that at the annual meeting in Lancaster, holden in March, 1805, Robert Moore was chosen and sworn one of the hogreeves of that town. William Lovejoy was town clerk of Lancaster for 1805, and recorded the warrant for the annual meeting for that year, by which record it does not appear that the warrant had a seal upon it. The warrant was dated on the 22d day of February, 1805, and the meeting was held on the 12th day of March, 1805. The certificate of the posting up of the warrant, as recorded by the clerk, is as follows : " We certify that the within was posted up on the sign-board more than fifteen days prior to the day of meeting." This was signed by the selectmen. The record of the oath administered to Moore, as made by the clerk, is as follows : " Coos ss. : Lancaster, March 12, 1805. Personally came before me, Samuel Glover, Robert Moore, and took the oath of office as hogreeves for the town of Lancaster for the year ensuing. Adino N. Brackett, Selectman."

The plaintiff then offered in evidence what purported to be a copy of an original warrant, having a seal upon it, and in all other respects corresponding to the record made by the clerk as aforesaid, and having a similar return upon it, for the purpose of showing that the meeting was duly warned. Upon this copy was the following certificate : " Lancaster, Jan. 21, 1842. I hereby certify that the above and forego-

ing warrant and return thereon is a true copy of the original. Reuben Adams, Town Clerk of Lancaster." On the warrant is the following certificate : " Warrant for annual meeting, A. D. 1805, recorded :—Attest, Wm. Lovejoy, T. C." Accompanying this copy, to which it was annexed, was the deposition of said Adams, in which he stated that he had been clerk of Lancaster for three years then last past, and that he found the original warrant in the town clerk's office ; that the copy annexed was a true copy ; that on the original warrant there was a seal at the time he gave his deposition ; that he found the warrant more than a year prior to the time he gave his deposition, and lent it to the selectmen of Lancaster, and it had not since been in his hands until that day ; that he could not testify that when he found it there was a seal upon it, but that the copy annexed was a copy of the warrant returned to him on the day he gave his deposition ; that there was a record of a warrant in his office, made in 1805, on which no seal appears ; that Wm. Lovejoy has been dead some years ; that the witness had seen Adino N. Brackett and Richard Eastman write, and thought their names on the warrant were in their hand writing, but never saw Elias Chapman write, whose name also appears on the warrant. The names of those three persons purport to have been signed to the warrant, as selectmen of Lancaster.

The record of the choice of Moore as hogreeve is thus: " Voted, Samuel Glover, Robert Moore, hogreeves."

The defendant objected to all the foregoing evidence, as incompetent for the purposes for which it was offered ; also to the notice served on the defendant on the 11th of April, 1839, because it was not dated, and because it did not appear therefrom when the supplies specified in the notice were furnished. The part of the notice on which the question arises is as follows: " To the town of Lancaster : You are hereby notified that on the 15th day of January, last past, Esther Moore, then and ever since a person poor, &c., was relieved, and has ever since been supported by the town of

Peterborough, and the sums expended by the said town of Peterborough for the relief of the said Esther Moore, since the 15th day of January, are as follows : ' twelve weeks board and nursing, at two dollars per week, $24.00.' " The notice was signed by the selectmen of Peterborough.

The defendant objected to the second notice, which was served on the 29th day of November, 1839, because it was not returned to the office of the clerk of the C. C. Pleas within twenty days after its service. It appeared by the certificate of the clerk on the back of the notice that it was received and filed by him on the 27th of December, 1839.

The defendant also objected to the second and third notices, that they stated certain sums expended for board and *nursing*, while the claim in the writ is for sums expended for board and *washing*.

It appeared by the affidavit of John S. Wells, Esq., addressed to the court, that, by the laws of Vermont, for some time prior to 1805 and until 1817, any person coming into Vermont, and residing therein one year, gained thereby a legal settlement in the town where he resided, unless warned to depart therefrom during the year.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of this court upon the foregoing case ; upon which judgment is to be rendered, or it is to be amended by the court and judgment rendered thereon as amended, or it is to be set aside and a new trial granted, as the court may direct.

*Farley*, for the plaintiff. If this suit can be maintained, Northumberland ought not to have paid anything. It was paid under a mistake of fact or of law, and can have no effect upon the town of Lancaster. Payment of money, or a contract to pay, by a person having no connection with the party liable, can have no effect upon his rights.

The marriage of the pauper would give her a settlement in Lancaster, if Moore were settled there, although he had a

settlement in Vermont. 2 *N. H. Rep.* 131 ; *N. H. Laws* 300.

The act of 1791 relating to hogreeves was repealed in 1816, and the marriage was subsequent to that time. The repeal of the law could not affect a settlement previously acquired, though it would affect subsequent settlements.

The evidence shows that Moore was chosen a hogreeve. The warrant, if not under seal, was void ; but after thirty years have expired that cannot be inquired into. The copy of the record leaves it uncertain whether there was or was not a seal upon the warrant. The positive testimony of Adams is tantamount to evidence by a certified copy. He says he found it among the papers of the town, and gave it to the selectmen. It had a seal when it was returned to him, before he gave his deposition, and there is no presumption that the seal was placed there by the selectmen of Lancaster. The posting up of the original warrant is sufficient. It gives notice, and that is all that is required. It may be considered as a copy.

The selectmen have not stated the day on which the warrant was posted up, but after so long a time the presumption is that they have done their duty. The return rather shows that it was posted up more than fifteen days before the day of meeting, than the contrary.

The record showing that Moore was chosen hogreeve is in the ordinary form, and so is the certificate of his official oath. We need not show that he did any official acts.

The notice of April, 1839, and the return, show that the support was furnished within ninety days. The date is an immaterial matter, and the time of the notice is a question of fact.

As to the second notice, the statute requiring it to be returned to the clerk's office within twenty days is merely directory.

The objection on account of the variance between the notices and the writ, was not taken on the trial, when it

might have been obviated, and must be considered as waived. But the variance is immaterial. The statute requires only that the sums expended should be stated, and that is done here.

*Abbot & Fox*, (with whom was *Wells*,) for the defendant.

GILCHRIST, J. The maxim, *ignorantia legis neminem excusat*, is a fundamental one, and has always been received, with some few exceptions, as an elementary principle of the common law for many years. It is recognized as such in the *Doct. & Stu.*, *dial.* 2, *ch.* 46. It is an illustration of the tendency of the common law to aim at practical good rather than theoretical perfection, and to furnish a rule for the guidance of men in the common business of life. In *Brisbane* vs. *Dacres, 5 Taunt.* 144, which is a leading case on the subject, *Gibbs*, J., states the rule to be, that money paid to a man who claims it as his right, with a knowledge of all the facts, cannot be recovered back. It may be that on a farther view he may form a different opinion of the law, and his subsequent opinion may be the correct one. But there are many doubtful questions of law, and when they arise the defendant has an option either to litigate the question, or to submit to the demand and pay the money. If the money be paid with a full knowledge (or with the means of such knowledge,) of all the circumstances, it cannot be recovered back on account of the payment having been made under an ignorance of the law. *Bilbie* vs. *Lumley, 2 East* 469. If it were otherwise held, there would be no saying to what extent the excuse of ignorance might not be carried; it would be urged in almost every case. *Per Lord Ellenborough, Bilbie* vs. *Lumley, supra.* This is a settled principle of law and sound policy. There is no other principle which is safe and practicable in the common intercourse of mankind. *Shotwell* vs. *Murray,* 1 *Johns. Ch.* 512; *Lyon* vs. *Richmond,* 2 *Johns. Ch.* 60. But whether

money paid through ignorance of the law can be recovered back, is said by Mr. Justice *Morton* to be a much vexed question, and involved in no inconsiderable perplexity. *Haven* vs. *Foster*, 9 *Pick.* 129. This, however, must be considered as one of the exceptions to the general recognition of the principle above referred to.

The plaintiff contends that the sum of $33.42, paid by Northumberland to Peterborough, and being the sum expended for the support of the pauper from the 15th of January, 1839, to the 4th of May, 1839, may now be recovered of the defendant, because it was paid by Northumberland in ignorance of the law, and the plaintiff may now be compelled to repay it to that town. But what the circumstances were under which the money was paid, does not appear. If it were paid with a knowledge of the facts, or with reasonable means of ascertaining them, our opinion is that it cannot be recovered back. If it were paid in ignorance of a material fact, without reasonable means of ascertaining it, then it might be recovered. But mere ignorance of the law will not enable a party to recover money paid in consequence of that ignorance. Whether the presumed liability on the part of Northumberland, to discharge which the payment was made, arose from a view of the law, or of the facts, or from a consideration both of the law and the facts, does not appear. But the facts might have been ascertained by one party as easily as by the other; and, in the absence of all evidence to the contrary, we must presume that the money was paid with a full knowledge of all the facts.

Perhaps it may be said, that from the present case we are authorized to believe that this was not a compromise of disputed rights, but merely a payment of money by Northumberland upon a request by Peterborough. But whether this were so, does not appear, and therefore what would be the effect of such a payment it is unnecessary to decide. Peterborough, however, now has the money, and it does not ap-

pear that this town ever has been or ever will be called upon to repay it; and during the existence of such a state of facts there is surely no reason why the defendant should be compelled to pay the plaintiff the same sum of money which the latter has already received from Northumberland. The verdict, therefore, must be amended, by deducting from its present amount the sum of $33.42.

The case also finds that the selectmen of Northumberland made an agreement in writing with the plaintiff that they would support the pauper from the 4th day of May, 1839, to the 4th day of December, 1839. The sum expended during this period was $45.85, but no part of it has been paid by Northumberland. But such an agreement cannot affect the right of the plaintiff to recover. Selectmen have a general superintendence over the prudential affairs of the town. They are confined in the exercise of their duties to such acts as, in the exercise of a sound discretion, would be proper. *Woodbury, J., Sanborn* vs. *Deerfield,* 2 *N. H. Rep.* 253. But they have not a general authority to bind their town by contract. *Andover* vs. *Grafton,* 7 *N. H. Rep.* 300. They have a discretionary power to give an indemnity on behalf of the town. *Pike* vs. *Middleton,* 12 *N. H. Rep.* 278. As they are *ex officio* overseers of the poor, they may waive exceptions to a notice given them by another town that a pauper has been relieved. *Hanover* vs. *Eaton,* 3 *N. H. Rep.* 38. They cannot by their mere acts or declarations change the settlement of a pauper from one town to another, and confess away the rights of their town. *Peru* vs. *Turner,* 1 *Fairf.* 185 ; *Jaffrey* vs. *Cornish,* 10 *N. H. Rep.* 505. And there is nothing in the statutes, or in the nature of their authority, or in the reason of the matter, which can enable them to bind their town to maintain a pauper with whose support the town is not legally chargeable. Within their proper sphere they may do all acts necessary to the proper discharge of their duties, but of their mere motion to impose a pecuniary liability upon the town, is be-

yond their powers. They might as well assume to charge the town with the payment of a sum of money for any other purpose, as for this; and our opinion is that this contract does not affect the right of the plaintiff to recover.

The defendant excepts to the notice served on the 11th of April, 1839, because it is not dated, and because it does not appear when the support specified therein was furnished. But the notice states that on the 15th day of January, *last past,* and ever since, the pauper has been supported by Peterborough, and that the sums expended for her relief since the 15th day of January are as follows, &c. We have held that where a complaint under the bastardy act alleged that the child was begotten on the 15th day of May *last,* and was not dated, but was sworn to on the 13th day of January, 1840, the time was alleged with sufficient precision. *Marston* vs. *Jenness,* 12 *N. H. Rep.* 137. The service renders the time in this case as certain as it was made by the administration of the oath in the case cited, and this exception must be overruled.

It is objected to the second notice, served on the 29th day of November, 1839, that it was not returned to the clerk's office within twenty days from its service. The act of December 16th, 1828, section 11, (*N. H. Laws* 306, *Ed. of* 1830,) which governs this case, requires such a return to be made. Under the second section of the act of June 27th, 1809, which contained a similar provision, we have held that an action for relief furnished a pauper could not be maintained, unless such return were made. *Conway* vs. *Wakefield,* 3 *N. H. Rep.* 277. That decision settles that nothing can be recovered under this notice, and the amount specified therein must be deducted from the verdict.

It is also objected to the second and third notices, that they specify the relief furnished to have been "board and *nursing,*" while in the writ the relief is stated to have been "board and *washing.*" Nursing, which in this connection means aid rendered in sickness, is a very different matter

from washing, and proof of the latter cannot upon any principle support a claim for the former. The party has chosen to specify in this manner, and must be bound by his specification ; and for this variance the notices are bad, and the amount of the support mentioned in them must be deducted from the verdict.

It is objected that there is no evidence that the meeting at which Moore was elected was duly held, or that the warrant for the meeting had a seal upon it. These proceedings took place thirty-eight years ago, and the case finds that Lovejoy, the town clerk at that time, is dead. A copy of the original warrant for the meeting was produced on the trial, and there is evidence that the signatures of two of the persons whose names are signed to it as selectmen are genuine. It also appears that the warrant, when it was found by Adams, had a seal upon it ; or at least it may fairly be inferred that such was the case, for there was a seal upon it when it was returned to him by the selectmen, to whom he had lent it, and there is no reason to suppose that the seal was placed there by them. We think that these facts, together with the evidence of the posting up of the warrant, and the election and oath of Moore, bring the case within the principle of *Bishop* vs. *Cone*, 3 *N. H. Rep.* 515 ; *Northwood* vs. *Barrington*, 9 *N. H. Rep.* 369, and *Cavis* vs. *Robertson*, 9 *N. H. Rep.* 524, and that there is sufficient evidence to authorize the jury to presume that the meeting was duly held.

It is said that the pauper's husband acquired a settlement in Vermont, and consequently lost his settlement in Lancaster. This objection must be overruled, because the point is settled the other way by the case of *Hanover* vs. *Weare*, 2 *N. H. Rep.* 131, in which it is held that the operation of all pauper laws is local, and that in disputes between our own corporations, we can look only to settlements acquired within our own limits.

The plaintiff is entitled to recover only the sum of $45.85, the amount expended from the 4th day of May to the 4th

day of December, 1839, and being the sum which North-
umberland contracted to pay. The verdict must be amended
by being reduced to $45.85, and for that sum there must be

Judgment for the plaintiff.