## GLIDDEN *v.* THE TOWN OF UNITY.

The recital of facts necessary to give to overseers of the poor power to bind out a pauper, as an apprentice, contained in the indentures, is evidence against the master, of those facts.

A deed creates no estoppel, except between those who are parties to it.

Overseers of the poor, in binding out paupers as apprentices, act as public officers, and not as the agents of their towns.

Such overseers have no power to release or discharge any of the stipulations of the indentures.

A proviso to this effect, "providing said minor shall continue to be a healthy boy and a faithful servant during his minority," will be held to qualify all the preceding covenants, and will be construed to mean a permanent loss of health.

This is an action of assumpsit upon a special contract for the support of Albion Dyke. Said Dyke has a legal settlement in the town of Littleton, but on the third day of March, A. D. 1847, he was bound out by the overseers of the poor for the town of Unity, to the plaintiff, until he should be of the age of twenty-one years. The indenture was as follows:

"This indenture, made by and between Ezra J. Glidden, overseer of the poor of the town of Unity, in the county of Sullivan, and State of New Hampshire, of the one part, and Sylvester Glidden, of said Unity, of the other part, witnesseth, that the said overseer, by the authority vested in him by law, have bound, and do hereby bind, out Albion Dyke, (a minor child of Benjamin Dyke,) a person residing in said town of Unity, who is not employed in any lawful business, and whose parents are unable, or neglect, to maintain him, as an apprentice unto the said Sylvester Glidden, to learn the business, art or trade of a farmer, and to serve the said Sylvester faithfully, from the date hereof, until the ninth day of November, in the year eighteen hundred and sixty, when the said minor will be of the age of twenty-one years.

"And the said Sylvester Glidden, on his part, covenants: that he will teach said apprentice, or cause him to be faithfully taught, in the said business, trade or art, and will provide for him suitable board, lodging, clothing, nursing, attendance, and other necessaries, for his comfortable support in sickness and in health, and give him a good education, sufficient for him to transact business as a farmer or mechanic, (providing said minor is capable of receiving it, or has a common capacity to receive an education,) and pay said minor, at the age of twenty-one years, one hundred dollars, and give him two suits of clothes throughout, one suit to be a common every-day suit, the other a meeting

suit.   Providing said minor should continue to be a healthy boy, and a faithful servant during his minority.  .

"In witness whereof, the said parties have hereunto set their hands and seals, this the twenty-third day of March, in the year eighteen hundred and forty-seven.

"EZRA J. GLIDDEN, [L. S.]

Overseer of the poor in Unity.

"SYLVESTER GLIDDEN. [L. S.]

"Signed, sealed and delivered

  in presence of

"HENRY CRAM,

"ELUTHERIA CRAM."

Under these indentures the said Dyke served the plaintiff, and was supported by him until the commencement of this suit, March 12, 1851.   In August, 1850, said Dyke received a very severe injury, which endangered his life, and confined him to his bed for several months.

The evidence on the part of the plaintiff tended to prove that in October, 1850, the plaintiff applied to the selectmen of Unity in relation to the boy, and two of them went to his house, and after speaking of the indentures, and expressing the opinion that they were null and void, agreed to pay the plaintiff a certain sum per week for the support of the boy.   The defendants' evidence, on the contrary, tended to show that the selectmen agreed to write to the selectmen of Littleton, and to pay the plaintiff only in the event that the selectmen of Littleton should allow or settle the claim.

The plaintiff's counsel took the following exceptions, in writing, to the admission and effect of the indentures:

1. Because it does not appear affirmatively that at the time of the execution of the indentures, Albion Dyke was not employed in any lawful business, and that his parents were unable, or neglected, to maintain him.

2. Because it does not appear affirmatively that there was any inquiry into and adjudication of the fact by any

legal proceeding, before any proper authority, that said Dyke was a person not employed in any lawful business, and that his parents were unable, or neglected, to maintain him, with due prior notice to his parents of such inquiry and adjudication.

3. Because the indentures are offered substantially on the ground that they are an estoppel or bar to the plaintiff's action, and, therefore, should have been specially pleaded, and not admitted in evidence under the general issue.

4. Because, if the indentures show a contract once subsisting and valid between the parties, the rights of the defendants under them were waived expressly by their agents, the overseers of the poor, and impliedly by their contract with the plaintiff for the support of said Dyke, if the testimony of the plaintiff is to be believed.

5. Because, if they show a subsisting and binding agreement between the parties to this suit, it was the duty of the defendants, nevertheless, to furnish relief to the said Dyke, if he stood in need of it, and the defendants could contract for such relief, with the plaintiff, as well as with any other person.

6. If the indentures should be admitted, their true construction does not bind the plaintiff to support the said Dyke, if he is permanently disabled by reason of sickness or other cause.

7. If the indentures are admitted, they can go to the jury only as evidence tending to prove the relation of master and apprentice between the plaintiff and said Dyke, and that, notwithstanding, if the jury find that the plaintiff was in such circumstances as to render relief to him or to said Dyke, as a member of his family, necessary, it was the duty of the defendants to furnish such relief; and if the relief, under such circumstances, were furnished to said Dyke, as a member of plaintiff's family, a contract with the plaintiff to furnish such relief would be binding on the defendants.

These exceptions were overruled by the court, and a ver-

dict directed for the defendants, subject to the opinion of the
superior court.   In respect to the facts necessary to warrant
the binding out, the ruling was, that the recital of the in-
strument, signed by the plaintiff, was to be deemed an ad-
mission by him of their existence, and no evidence was of-
fered to disprove them.   It appeared that the selectmen
supposed the indentures void, because it had been ascer-
tained that Dyke, in 1847, had a legal settlement in Little-
ton.   It was not proved that the indentures had ever been
surrendered, or cancelled, or waived, except as appears in
this case.

*Burke*, for the plaintiff.

The defence in this case rests on the validity of certain
indentures, and their legal operation, to which the plaintiff
filed certain objections, upon which the questions to be con-
sidered in this case arise.

I. The two first objections go to the validity of the in-
dentures.   The Revised Statutes, ch. 66, sec. 5 and 6, under
which the indentures were made, authorize the overseers of
the poor " to bind as apprentices all children residing in
their respective towns, who are not employed in some law-
ful business, and whose parents are unable or neglect to
maintain them."   The power of the overseers thus confer-
red, is a high and arbitrary power, in derogation of the com-
mon law; and before they can exercise it, the facts upon
which the statute gives such power must be shown affirma-
tively to exist.   If not, the binding out will be void, and all
contracts to that end will be void.   It should affirmatively
appear, first, that the minor is a resident of the town, and
not employed in some lawful business, and that his parents
are unable, or neglect, to maintain him, and, second, that
an inquiry into and adjudication upon these facts, with due
notice to the parties concerned, (the minor and his parents,)
before the binding out will be legal and valid, and obligato-
ry upon any body.   *Reidell* v. *Morse*, 19 Pick. 358.   The

records of the county court in Kentucky, in relation to the binding out of children, in certain cases, must show the facts from which the jurisdiction results, their jurisdiction being special and limited. *Freeman* v. *Strong,* 6 Dana 282. It is an essential principle of natural justice, that every man have an opportunity to be heard in a court of law, upon every question involving his rights and interests, before he is affected by any judicial decision of the question. *Commonwealth* v. *Cambridge,* 4 Mass. 627 ; *Central Turnpike Corporation, Petitioners,* 7 Pick. 13. Therefore, if it do not affirmatively appear that the facts required by the statute, authorizing the binding out, exist, and further, if it do not affirmatively appear that due inquiry and adjudication was made by the overseers of the poor, upon these facts, with due notice to the minor and his parents, then the indentures are simply void. And if void as to one party to them, they are void as to both.

Where a stranger, having no authority over a minor, undertakes to bind him as an apprentice, and covenants for his faithful service, the contract is not valid at common law, as to either of the parties. *Butler* v. *Hubbard & a.,* 5 Pick. 250.

Where overseers of the poor make indentures which are not valid by the statutes under which they are authorized to act, they are not liable on the covenants, the indentures being void. *Same case* last cited.

If the indentures falsely recite the facts necessary to justify the binding out, they cannot be supported. See *Reidell* v. *Morse,* above cited.

Inasmuch as the power claimed by the defendants in this case, for the overseers of the poor, is in derogation of the common law, and against the rights of the citizen, it is incumbent upon the defendants to establish, in the first instance, the validity of the indentures. Nothing is to be presumed in favor of the exercise of such a high and arbitrary power. Nor can the facts that the plaintiff has signed

the instrument purporting to contain a recital of those facts, relieve the defendants from the necessity.

The overseer, in this instance, acted as a public officer. The recital of facts in the indenture is his statement on his oath, as a public officer, upon the faith of which others have a right to act, without incurring the danger of being placed in a position which would compel them to admit the truth of the facts thus recited. In this case, the plaintiff had a right to presume that the overseer, a sworn public officer, had complied with every requirement of the law touching the binding out of the minor; and because he executed the indentures upon the faith that that officer had taken every step required by law to make the binding lawful, it would be unreasonable and unjust to hold him to an admission of these facts, under any circumstances.

II. But if a different view should be taken of this matter, the indentures being offered substantially as an estoppel, and so ruled by the court below, ought not to have been admitted under the general issue, in the absence of a plea or brief statement. Matters of estoppel should be pleaded specially, as such. 1 Chit. Pl. 548. If the court had ruled that the indentures might be given in evidence, as mere argument, and not as an estoppel, which would be conclusive upon the plaintiff, perhaps it would have been proper.

III. But notwithstanding the indentures, if they were expressly or impliedly waived, as they are in fact in this case, as stated in the fourth objection, by the overseers of the poor, the agents of the defendants, the contract with the plaintiff for the support of the pauper minor was valid. It is the duty of defendants to render relief to all persons residing within the town, and standing in need of relief, and the overseers of the poor are the agents by whom such relief is rendered. Rev. Stat., ch. 66, sec. 1. Selectmen and overseers of the poor may do any act within the scope of their duty and authority. The selectmen, being *ex officio* overseers of the poor, may bind the town by a contract not to

take advantage of any defects in a notice. *Hanover* v. *Eaton*, 3 N. H. Rep. 38. They may thus waive a legal right of the town. They may bind the town by a promissory note, or other contract within the scope of their duty and authority. *Andover* v. *Grafton*, 7 N. H. Rep. 300. It is within the scope of their duty and authority to provide for the relief of the poor, and to make contracts for that purpose. Under circumstances which would render it reasonable and proper, namely, the embarrassed circumstances ·of a parent, they may waive the obligation of the parent to support his child, and render relief to the latter, if needed. So in the case of master and apprentice, they may, if the former be poor, waive his obligation to support the minor, and render relief to the latter, when standing in need of it, as was done in the case now under consideration.

IV. If the overseers of the poor could, under any circumstances, waive the rights of the town, under the indentures, and if the circumstances of the plaintiff, in regard to property, were such as would justify them in so doing, then they undoubtedly had the power to contract with the plaintiff for the support of the minor, who had become a pauper, as set forth in the fifth objection. If the plaintiff was not in poor circumstances, and Dyke had become by any means a pauper, to whom the defendants were bound to render relief, it is believed that a contract with the plaintiff to furnish that relief would be binding on the defendants, the latter having failed to plead the indentures by way of estoppel.

V. The true construction of the indentures does not bind the plaintiff to support the boy, Dyke, at all events. They are to be construed according to their meaning and intent, and all their parts are to have a legal effect. The construction is to be upon the entire deed or agreement. The whole contract is to be considered, in endeavoring to collect the intention of the parties. Every part of the instrument shall, if possible, be made to take effect. Chitt. Con. 70. The exposition, if possible, should give effect to every part of the

contract, which neither violates the rules of law nor the in-
tention of the parties.   If, therefore, a deed may operate in
two ways, the one of which is consistent with the intention
of the parties, and the other repugnant thereto, it will be
construed so as to give effect to the intention, as indicated
by the whole instrument. Story Con., § 254.  A general cov-
enant may often, in reference to the subject, be qualified
and restricted by a subsequent special provision.   Chitt.
Con. 71.   If the condition be only explanatory, and not re-
pugnant to the rest of the contract, it will operate as a lim-
itation.  Story Con., § 257.  Applying these principles to the
*construction of the indentures, it* seems clear that it was not
the intention of the parties thereto that the plaintiff should
be bound by his covenants, if the minor should become per-
manently disabled.   The substantial consideration of the
covenants, on the part of the plaintiff, is the labor and ser-
vice of the minor, and when, from any cause, he was de-
prived of that labor and service, the consideration failed,
and the plaintiff should, in law and equity, be released from
his obligations.

But if such be not the correct legal view of the nature of
the contract between the plaintiff and the overseers of the
poor, the former has expressly provided for this contingency
of a failure of labor and service, by a proviso, limiting the
obligation of his covenants to a continuance of the health
and fidelity of the apprentice.   The following is the lan-
guage of that proviso, viz : " Providing said minor shall
continue to be a healthy boy and a faithful  servant during
his minority."

This proviso is an uncommon clause to be inserted in in-
dentures of apprenticeship.   It is not to be found in any of
the forms prescribed in the books.   It stands independent of
the preceding covenants, and is evidently intended by the
parties to limit and qualify the preceding stipulation to sup-
port the minor in sickness and in health.   It is such a limi-
tation as a reasonable and prudent man would make, under

such circumstances. Taking the proviso with the other covenants of the plaintiff, it is evidently the intention of the parties that the plaintiff should support the minor in ordinary sickness, but not when he should become permanently disabled. It is not reasonable to suppose that the plaintiff would bind himself absolutely to support the minor, even when he had become permanently disabled, as in this case, and a weighty and onerous charge, instead of a help and assistant. Such could not have been the intention of the parties. Moreover, the proviso may have been inserted to save the necessity and expense of applying to the proper authorities for a discharge from his obligations, in the event that the minor had become permanently disabled, or had proved unfaithful. Nor can it be said that the proviso applies only to the covenant to give the minor $100 and two suits of clothes, on his arrival at full age. That is too narrow a view of the purpose of such a proviso. Moreover, the construction above given, gives effect to the proviso. If it be not the true construction of the contract, taken as a whole, the proviso is nugatory.

VI. If the indentures are admitted, they are evidence merely to prove the relation of master and servant between the plaintiff and Dyke, and the circumstances of the plaintiff were shown to be such as rendered relief to him or to the minor bound to him, and constituting a part of his family, necessary and proper. It was the duty of the defendants to furnish such relief.

The indentures in this case cannot create a higher legal obligation on the part of the plaintiff to support his apprentice than the relation of parent and child imposes upon the former to support the latter. Where the master himself is poor, and the apprentice becomes disabled, and the former, without great and serious inconvenience is unable to give the latter the necessary relief, he is not obliged, as contended by the counsel for the defendants on the trial below, to turn the apprentice from his house and abandon him, before the

duty of the defendants to render relief arises. He is no more required to do such a monstrous and inhuman act than a parent would be whose child stands in need of relief. He is required only to represent his condition, and that of his apprentice, to the overseers, in order to justify them in granting the relief required. It is not necessary that a master or parent should himself be absolutely a pauper, to justify the overseers of the poor in extending relief to his apprentice or his child, who is a member of his family. It is not the policy of the law to multiply pauperism. It does not follow that children cannot become paupers until their parents become so, nor that they must necessarily be paupers if their parents have become such. *Jenness* v. *Emerson*, 15 N. H. Rep. 486. The same remarks will apply with equal force to apprentices and masters. On the contrary, it is the policy of the law, dictated by prudence and sanctioned by law, as it is also their duty, to render temporary relief to all persons standing in need of it, to prevent, if possible, their becoming absolute paupers. It is not necessary in order to entitle a person to relief as a pauper, that he should be altogether destitute of property. *Poplin* v. *Hawke*, 8 N. H. Rep. 305. In the case last above cited the relief was furnished to one Moses Thorn and his wife and children. It was proved on the trial that Thorn had a life estate in a small house and barn and about six acres of land, and a fee in eight acres more, the value of all which did not exceed $100. It was held that the relief under such circumstances was properly furnished. In delivering the opinion of the court, Judge *Richardson* remarked, " that when a man with a house and a little real estate is by sickness or other accident reduced to want, he is not to be compelled to sell his house and clothing, and turn himself and his family out of doors, sick and naked, in order to entitle him and his family to relief. It is not for the interest of those who may be chargeable with his support, that he should be compelled to do this." When persons were not in the condition of pau-

pers, technically speaking, but might have been in distress
and in need of immediate relief, evidence upon the general
question, whether they were so situated ought to have been
admitted on the trial of this action brought to recover the
value of such relief. *Per curiam,* in *Stanbridge* v. *Holland,* 11
Pick. 461.

The authorities last cited cover precisely the question
raised on the seventh exception to the admission of the in-
dentures. On the trial in the court below, the plaintiff ten-
dered proof of his condition with respect to property, in or-
der to show that he was not himself able longer to support
his apprentice without great and serious embarrassment to
himself and family; in fact, that he had little if any prop-
erty. Yet the court, in substance, ruled that such evidence
was no answer to his contract to support his apprentice, but
that the indentures were an absolute bar to this suit. In
this respect it is believed that the ruling of the court below
was most clearly erroneous.

VII. If the conclusion above expressed be correct, and
evidence showing the inability of the plaintiff to support his
apprentice should have been admitted, then it would have
certainly been proper for the overseers of the poor to make
the contract or arrangement alleged, for the relief needed by
the apprentice. The substance of the arrangement is alone
to be regarded. It is indeed in the form of a contract, but
in substance it is an arrangement by which the overseers of
the poor were to allow the plaintiff so much per week for
the support of the pauper, until a new arrangement was
made. If they had actually in advance paid him that
amount of money for the support, it would have been in
substance the same. The amount of the transaction was,
that from the time of the application for relief, they intend-
ed to relieve the plaintiff from the support of the pauper.
They might have made an arrangement for the support with
some other person, but they preferred to make it with the
plaintiff himself. For the welfare of the pauper, perhaps,

it was best that they should make it with the plaintiff, or it might have been absolutely necessary. And it is apprehended that the substance of the transaction is the same, whether they paid the plaintiff in advance, or agreed to pay him at a future time. On this point, it is believed that the ruling of the court below was erroneous.

*Cushing*, for the defendants.

This case turns, as is believed, almost wholly on the effect of the indentures, and it will therefore be proper to consider the nature and effect of such instruments.

I. There is no need of any adjudication by any tribunal in order to give the overseer of the poor jurisdiction. If the facts warrant the action of the overseer, that is enough to give him jurisdiction. The statute provides no tribunal with authority to adjudicate upon the matter. The case cited by the plaintiff was one where it appeared that the facts necessary to give authority to the overseers did not exist.

II. The indentures are a contract binding on the plaintiff, but which, being for the benefit of the minor, cannot be waived by the selectmen. The statute provides a mode by which the indentures may be cancelled, when the proper tribunal has adjudged that the interest of the apprentice requires it. Comp. Stat. ch. 70, § 6; ch. 160, §§ 7, 8.

It is said the indenture was waived by the selectmen. They said the indentures were null and void, but it may be a question whether a waiver, if a selectman had power to make it, can be inferred from such loose talk. But it has been held in Massachusetts that selectmen have no power to cancel an indenture. The apprentice has an interest, of which the selectmen cannot deprive him. They are required to see that the master does his duty, but the indenture can be cancelled only by a court. The selectmen can neither cancel nor waive them.

III. The indentures are a contract, the obligation of

which is not dependent on the ability of the master.　He is no more excused from the performance of his contract by want of pecuniary ability, than the obligor of a bond or the maker of a promissory note is excused for the same cause.

IV.　It is true that if the indentures were to be relied on as an estoppel, technically, it might in some instances be necessary to plead them specially.　But they contain the written acknowledgement by the plaintiff, of the truth of the facts recited in them, and so are good enough *prima facie* evidence of those facts.　As there is no testimony to control their conclusions, they are sufficient proof.　The rule is simply that instruments which are relied upon as an estoppel must be pleaded, if the case admits of it.　But they may be put in evidence, subject to be impeached like any other evidence.　They were not offered as conclusive evidence of the facts recited, but as acknowledgments of the party himself.　The court did not rule, and there was no occasion to rule, that the indentures were an estoppel as to those facts.　All the evidence in the case shows that the facts did exist, which gave authority to the overseer.

V.　It is contended that Dyke was to be supported by the plaintiff only if he remained well.　We think that is not the true construction of the indentures.　No reliance is to be placed on the punctuation.　The construction should be made upon the force of the language used, without reference to the punctuation.　The covenant is to support the apprentice in sickness and in health ; to add to that a proviso, if the minor continues healthy, seems to us absurd. We understand this proviso to relate to the clothes and the $100.

VI.　The plaintiff, being bound by his written contract to support the apprentice, was only in fact fulfilling that contract when he supported the boy ; and there is no consideration for any provision by the town to pay.　*Crawhurst* v. *Laverock*, 16 Eng. L. & Eq. 501.　If the selectmen thought the indentures void, and therefore agreed to pay,

under a belief that the plaintiff was not bound, there is no-thing hard in this defence. The attempt is to make them pay him for doing what he was already bound by his contract to do. He was bound, though he was poor, and his liability could be enforced if he ever became able. The selectmen had a right to assist this boy if they found him in need, but they afforded him no aid; they agreed with the plaintiff to furnish him assistance, under a mistake as to their rights, and finding that he has done only what he was by law bound to do independently of their contract, they properly resist a claim to be paid for doing what he was bound to do without pay. *Powers* v. *Ware*, 2 Pick. 454, contains an important discussion of the law relative to such indentures.

BELL, J. The authority of overseers to bind out the children of poor persons, is found in section 5 of chapter 66 of the Revised Statutes. "The overseers of the poor in any town" "may set to work in the workhouse or elsewhere, or bind out as apprentices, all children residing in their respec-tive towns, who are not employed in some lawful business, and whose parents are unable or neglect to maintain them."

The first question which arises in the case before us is, whether the overseer of the town of Unity had authority to bind out the boy, Albion Dyke. This power is derived, if it exists in the case, from the statute, and the acts of the overseer, in any other cases than those authorized, are mere-ly void. The authority is to be strictly construed, because it is in derogation of common right. The children who are thus liable to be bound out, must be, first, residents of the town; second, who are not employed in any lawful busi-ness; and third, whose parents are unable or neglect to maintain them. These facts must be proved, whenever the validity of the indentures is called in question. The nature of the proof to be produced, may depend something upon the party who calls for it. If that person has, at any time, deliberately admitted the facts required to

confer the authority in any way, as orally, in writing, under seal or on record, that admission is evidence against him, *prima facie*, sufficient, though it may be liable to be contradicted or disproved. *Smith* v. *Taylor*, 4 B. & P. 210; *Radfard* v. *McIntosh*, 3 D. & E. 632; *Peacock* v. *Harris*, 10 East 104; *Horn* v. *Whittier*, 6 N. H. Rep. 89; *Ford* v. *Grey*, 6 Mod. 44; S. C. 1 Salk. 285; Com. Dig. Ev. B. 5. It is on such evidence the defendants rely in this case. They produce the indenture executed by the plaintiff, in which the facts required to give this authority to the overseer are recited. They say this is proof enough for our purpose for the present, until something is shown to the contrary. And no evidence of that kind was offered.

" Admissions," says Phillips, (Ev. 367,) " of a party by deed under seal are entitled to great weight, on account of the deliberation implied by the nature of the instrument, if they do not even exclude any contrary statement."  " It has laid down, apparently without sufficiently adverting to the circumstance of the deed being used by a party to it, or to the fact of its being pleaded by way of estoppel or not, that a party who executes a deed is precluded from saying that the facts stated in the deed are not truly stated. But it seems that a party to a deed may contradict it in an action between himself and a stranger to it." This is the position of the plaintiff here, as to the proof of the facts necessary to authorize the overseer to bind out; the admission is evidence, but liable to be met and disproved by contradictory evidence.

It is said that this evidence is introduced by way of estoppel, and it should not be received under the general issue; it should have been pleaded. But we understand that there is no estoppel between a party to a deed and a mere stranger, which is this case. *Wilkins* v. *Dingley*, 16 Shep. 73; *Averill* v. *Wilson*, 4 Barb. 189; *Sparrow* v. *Kingman*, 1 Coms. 248; Co. Litt. 352 a.; Com. Dig. Estop. C.

Though the overseer is a town officer, and, for many pur-

poses, is an agent for the town, yet in cases of this kind he acts by virtue of statutory powers, conferred directly upon himself, and not in any way as an agent or servant of the town. The town itself had no power, in any case relating to the binding out of apprentices, and, consequently, could confer none. They are no parties to the acts of the overseer, in such cases, neither are they in any way bound by them. To the indentures the town was a mere stranger.

If they had been a party, and might have used the deed as an estoppel, by pleading it in due season, still as they have not done so, they have, at most, lost the benefit of its conclusive character as an estoppel, and not the advantage of its weight in evidence as an admission.

It is not easy to see how a plea of estoppel could have been framed to this action; and if the party had no opportunity to plead it, he would have had all the benefit of the estoppel, when offered in evidence, without pleading. *Isaacs v. Clark*, 12 Vermont Rep. 692; *Wight* v. *Butter*, 6 Wend. 284; *Trevivan* v. *Lawrence*, 1 Salk. 277.

It is not, however, necessary for us to pursue this point, for it is not claimed by the plaintiff that there is any estoppel here; and we have examined the case to find the grounds on which it is suggested that this evidence was offered, substantially, as an estoppel, without success; neither do we discover any foundation for the suggestion that the court, substantially, ruled that it was so offered. As we understand the case, it was offered simply as competent evidence, as an admission of the party tending to prove the facts recited.

It is suggested, in the argument for the plaintiff, that it should be proved that an inquiry into and adjudication upon these facts, with due notice to the parties concerned, (the minor and his parents,) was had, before the binding out can be legal and valid, or obligatory on any body.

We have carefully examined the case of *Russell* v. *Morse*, 19 Pick. 358, cited in support of this position, and it seems

to us to fall far short of sustaining the position of the argument. That the parties interested are entitled to a full hearing upon the facts necessary to give validity to such an indenture, is quite clear, but we do not understand that overseers of the poor are vested with any power to adjudicate upon this question in any way to affect the rights of such parties. It is nowhere said in our statutes, nor in any of the long lists of enactments from which our legislation is borrowed, that these officers are to exercise any judicial powers. No mode is provided for calling parties before them, nor for appealing from their decisions. And we are unable to satisfy ourselves that the Legislature could have intended to invest any power to conclude the rights of parties in such a matter as this, in such a class of officers, deciding, without legal knowledge, on the law, and without a jury, upon the facts, and without appeal or revision. We think it clear that the hearing to which parties are entitled, is one before the ordinary courts of the State, in every case where the validity of such indentures may come in question.

The plaintiff next takes the ground that, admitting the original validity of these indentures, they are no longer in force, because they have been waived by the overseers of the poor, the defendants' agents.

There are several objections to this position. The overseers, in making such indentures, act as public officers, in the discharge of a public duty, and not chiefly, if at all, as agents of the town. Their duty, under the statute, is discharged when the indentures are made, and they have no further duty and no further power than to see that the contract is executed in good faith towards the boy. They have themselves no interest and can release none. The town is not a party, and neither they nor their agents can affect the validity of the agreement by any release they can make. The statute has provided a mode by which the master or the apprentice may be discharged from the indenture, (Rev. Stat.,

ch. 66, § 6, and ch. 151, § 7, &c.;) but the release of the overseers or of the town cannot discharge either from their obligations to the other.

The covenants, in such indentures, are held to be independent. They are not discharged by any failure to perform their part of the contract, because of the gross injustice of allowing a party to discharge himself of all the really valuable and important parts of his duties, by reason of some trivial failure on the other side. And the same reason applies with increased force to forbid a party to such a contract, who has no interest, to discharge those who are interested, from doing their duties. The minor himself is incompetent to act, and his situation would be pitiable indeed, if, after having served faithfully the entire term of his apprenticeship, he should find that the day before, the overseers had seen fit to discharge or release his indentures, and his claim was gone to the winds.

Provision is made, as has been before remarked, for the discharge of such indentures, upon application to a disinterested judicial tribunal, and after a full hearing of all parties who are interested. It being, then, clear that neither the town nor the overseers have any power to release or discharge the master from any of the obligations of his contract, their waiver, either express or implied, can have no greater effect. It may not, however, be amiss to observe that we have failed to notice in our books any doctrine relating to waiver as a defence to a sealed instrument.

The duties of the overseers to afford relief to all persons found within their town, who are poor and stand in need of relief, are clear. It matters little what may be the duties or obligations of others, whether towns or individuals, by nature, by contract, or by statute; if the person is found poor and standing in need of relief, it is to be furnished to him, and it is to be continued until the need of it ceases. Rev. Stat. ch. 70, § 1; *Otis* v. *Strafford*, 10 N. H. Rep. 352. As a necessary consequence of this duty, they have the power

to procure necessaries for those who need them, and to make valid contracts with others to furnish such necessaries, and their towns are bound by their contracts. See *Peterborough* v. *Lancaster*, 14 N. H. Rep. 382. So far as any contract proper for them to make is concerned, it may be made with any person who is competent to bind himself by a valid agreement. And there was nothing in the case of this plaintiff, so far as appears by the case, to preclude such a contract with him. The effect of every contract is, to some extent, varied by circumstances, and it may prove, as to any contract, however valid in itself, that for reasons extrinsic to the contract, it is not binding upon one or both of the parties. That is the position taken here. The contract is admitted to be in itself reasonable and proper; but it is alleged that, owing to certain duties, which this plaintiff had before assumed towards this boy, it does not operate to bind the town, and the case cited by the defendants' counsel in 16 Eng. L. & E. Rep. 501, and the cases referred to in a note there, go far to show that a contract to pay a man for doing what he is at the time under obligations to do, is not binding. If the town should now be compelled to pay the plaintiff's claim, it is very clear that, if the plaintiff's contract to support this boy is now binding, justice requires that, in some form, they should have redress against him, for the amount which they had been compelled to pay, just as they ought if they had been compelled to pay to a third person. Such circuity of action the law always avoids.

This brings us to the point upon which this case turns in our minds, which is the construction of the indentures. The covenants of the plaintiff are all comprised in a single sentence, at the close of which is this unusual, but, perhaps, not unreasonable proviso : " providing said minor shall continue to be a healthy boy and a faithful servant during his minority." If any reasonable objection existed against this condition, the position of the defendants does not enable him

to take advantage of it, since its effect would, in that case, be to annul the indentures on which their defence rests.

It appears that in August, 1850, the boy received a very severe injury, which endangered his life, and confined him to his bed for several months. And though not expressly so stated, it seems to be treated in the argument as case of permanent disability, such as would come within the language of the proviso. Taking that to be the correct view of the facts, the question then arises how far does this proviso affect the covenants of the plaintiff. The plaintiff contends that it extends to all the covenants on his part, while the defendants contend that it applies only to the covenants for money and clothing at the close of the preceding sentence. And we think there is nothing in the form of the expression and nothing in the nature of the provisions, which would naturally limit the effect of this proviso to the final clauses of the plaintiff's agreement, or which, in any way, renders it less applicable to the clauses which precede them. As we read it, we understand this proviso to mean a permanent loss of health, ( *Starksborough* v. *Hinesborough,* 15 Vt. Rep. 1 Slade, 200,) and to be a condition applying to the whole ¡contract. If, then, that proviso had failed, the contract on the part of the plaintiff had all failed with it, and the obligation of the plaintiff to support the boy had ceased. The only objection to the obligation of the contract made with the plaintiff, by the overseers of the poor on behalf of the town, is obviated, and the plaintiff's right to recover became complete.

If there was doubt upon this point of the failure of the proviso, that should have been submitted to the jury. The question, too, as to the actual contract, made by the selectmen of Unity with the plaintiff, seems not to have been passed upon, though these, upon the view we take of the law, were the only points material to be settled.

Glidden *v.* Unity.

As upon the questions of law raised upon the indentures, we think the defendants have no valid defence, but might be charged, if the facts relied on by the plaintiff were supported in proof, the verdict must be set aside, and the case submitted to the jury.